THOMAS F. PURNELL ET AL. V. B. F. GANDY & SON.

1. CHARGE OF COURT.—In a suit for damage against an officer for seizing property, claimed as belonging to the estate of a party against whom proceedings in bankruptcy were taken, and where there is evidence tending to show that the goods seized had been conveyed by the bankrupt in violation of the provisions of the bankrupt law, it is error to refuse instructions asked by the defendant, informing the jury of the terms and provisions of the bankrupt law, apparently violated by the bankrupt, as to the goods so seized.

2. FRAUDULENT PREFERENCE BY BANKRUPT.—In such a suit, it was
error to refuse, when asked to instruct, the substance of section 35
of the bankrupt act.
3. DEPOSITIONS—OBJECTIONS.—Questions, and answers thereto, relat-
ing to matters of opinion or of law, may be objected to, when
offered; such objections do not relate to the manner and form of
taking and returning depositions.
4. OPINION OF WITNESS.—A question and answer eliciting merely the
conclusion of the witness as to a matter of opinion or of law: *Held*,
Not admissible, and that objections made thereto when the deposi-
tions were offered should have been sustained.

APPEAL from Upshur. Tried below before the Hon. Z.
Norton.

June 30, 1873, B. H. Gandy & Son brought an action
against Thomas F. Purnell, United States marshal for west-
ern district of Texas, Clifton Witherspoon, his deputy, Gregg
& Ford, Briggs, Payne & Co., and W. D. Simmons, for dam-
ages for maliciously and wrongfully breaking open the store-
house of plaintiff, and taking therefrom goods of the value of
$4,896.80; both actual and punitory damages were claimed.

The defendant pleaded proceedings in bankruptcy in the
United States District Court against one S. F. Spencer, in
which proceedings, under an order for the seizure of the
goods of the bankrupt, the goods were taken and turned
over to the assignee of said Spencer when he was appointed.

The pleadings are given substantially in the opinion.

The defendant asked the court to instruct the jury as fol-
lows: "If any person being insolvent, or in contemplation of
insolvency, within four months before the commencement of
proceedings in bankruptcy against him, with a view to give
a preference to any creditor or person having a claim against
him, procures any part of his property to be attached, or
makes any payment or conveyance of any part of his prop-
erty, either directly or indirectly, absolutely or conditionally,
the person receiving· such payment, or to be benefited by
such attachment, having reasonable cause to believe such
person is insolvent, and that such attachment, payment, or

conveyance is made in fraud of the bankrupt act, the same is void under the law." Other instructions were asked defining insolvency, fraudulent preference, payment, &c., under the bankrupt law, all of which were refused. The only instruction given, touching the issue made, attacking the transfer from Spencer, under which plaintiffs were charged to be purchasers with notice, is given in the opinion.

The jury found the following verdict:

"We, the jury, find for the plaintiffs against all the defendants the sum of $8,096.80 as actual damages, with costs of suit; and we further find $1,103.19 as exemplary damages, making the aggregate sum of $10,000 as actual and exemplary damages added together."

Upon this verdict judgment was rendered.

*Robertson & Herndon*, for appellants, discussed the facts with great ability; insisting that the charge of the court was erroneous, and that the charges refused should have been given, citing, Toof *v.* Martin, 13 Wall., 40; Sawyer *v.* Turpin, 5 Bankrupt Reg., 339; Wadsworth *v.* Tyler, 2 Bankrupt Reg., 316; Graham *v.* Stark, 3 Bankrupt Reg., 357; Scammons *v.* Cole, 3 Bankrupt Reg., 393; Rison *v.* Knapp, 4 Bankrupt Reg., 349; *In re* Forsyth *et al.*, 7 Bankrupt Reg., 174; Wilson *v.* City Bank, 5 Bankrupt Reg., 270; 17 Wall., 473; Driggs *v.* Moore, Foote & Co., 3 Bankrupt Reg., 602; North *v.* House, 6 Bankrupt Reg., 369; Walbrun *v.* Babbitt, 16 Wall., 577.

*A. T. Burke*, for appellees.—It is contended by appellants that the sale of the goods to Gandy & Son was void under the bankrupt law. If appellees are innocent purchasers they are not affected. The jury, by their verdict, say they were. (Jackson *v.* Henry, 10 Johnson Rep., 195; Fletcher *v.* Peck, 6 Cranch's Rep., 87 to 148; Bumpus *v.* Platner, 1 John. Ch. Rep., 216.) As to vague rumors, Jackson *v.* Given, 8 Johnson Rep., 140.

When the equities are equal, that title which is prior in time shall prevail—*Qui prior est in tempore potior est in jure.* (4 Kent, 178-9; 1 Story's Eq., 381, 434.)

It is not sufficient, to show fraud on the part of the vendor to the injury of creditors, to set aside the sale. It must be proven and shown that the vendee had notice, or a knowledge of the fraud. (R. & D. G. Mills v. Walker, Dallam, 416.)

The title of a second vendee can only be impeached by showing that he participated in the fraudulent sale, or that his purchase was *mala fide,* that is, made with a knowledge that the sale of the first vendee was fraudulent. (Bump on Bankruptcy, 468; Babbitt v. Walburn, 4 Bankrupt Reg., 121.) The attention of the court is especially called to the case of Anderson v. Roberts, 18 Johnson's Rep., 515.

Fraud on the part of a vendor cannot affect the right of a *bona fide* purchaser, for a valuable consideration, who was not a party to the fraud. (Pierson v. Tom, 1 Tex., 577.)

It is for the jury to determine, from the facts and circumstances developed by the testimony in a cause, whether the intention of the parties was fair and *bona fide* at the time of the sale, or was fraudulent. (Bryant v. Kelton, 1 Tex., 415.)

Fraud cannot be presumed; it must be actually proven, or a conclusion from facts that will not admit of any other conclusion consistent with fair dealing. (Tompkins & Co., v. Bennett, Admr., 3 Tex., 36; Paxton v. Boyce, 1 Tex., 317.)

The credibility of conflicting witnesses is a matter peculiar to the jury, and the verdict will not be set aside or disturbed because they may have erred. (Stewart v. Hamilton, 19 Tex., 101; Russell v. Mason, 8 Tex., 228; Mitchell v. Matson, 7 Tex., 4; Anderson v. Anderson, 23 Tex., 641; Latham v. Selkirk, 11 Tex., 321; Barnette v. Hicks, 6 Tex., 353; Baldridge v. Gordon, 24 Tex., 288; Davidson v. Edgar, 5 Tex., 496; Legg v. McNeill, 2 Tex., 428; Hall v. Hodge, 2 Tex., 323; Perry v. Robinson, 2 Tex., 490.)

A verdict must be clearly wrong to induce this court to set it aside. (Long v. Steiger, 8 Tex., 462; Gamage v. Trawick,

13

19 Tex., 64; Briscoe *v.* Bronaugh, 1 Tex., 340; Perry *v.* Robinson, 2 Tex., 491; George *v.* Lemon, 19 Tex., 152; Cummins *v.* Rice, Id., 226; Oliver *v.* Chapman, 15 Tex., 410; Ables *v.* Donley, 8 Tex., 336.) It is not enough that it is not clear that it is right, according to the case of Briscoe *v.* Bronaugh, 1 Tex., 340, or that there was conflicting evidence. (Edrington *v.* Kiger, 4 Tex., 93.)

If a verdict is right, and justice has been done, will this court interfere and set it aside and grant a new trial, because the court failed to charge the law fully, as complained of by appellants?

If, upon the whole, justice has been done, and the verdict be substantially right, a new trial ought not to be granted, though some mistakes have been made. (McLanahan *v.* Universal Insurance Co., 1 Peters, 170; Mirick *v.* Hemphill, Hemp., 179.)

Although the omission to charge on an important question of law arising on the trial, is not, in itself, a reason for granting a new trial, the court will, in its discretion, award a new trial, if the justice of the case requires it to be done. (Calbreath *v.* Gracy, 1 Wash., C. C., 198.)

A court will not grant a new trial unless the rules of law and the purposes of justice require it.

A new trial will not be granted for a misdirection of the judge, if justice can be done the parties by the exercise of other powers vested in the court. (Stimpson *v.* The Railroads, 1 Wall. Jr., 164.)

The jury having come to a proper verdict under an erroneous charge, and the evidence, though conflicting, being sufficient to reasonably satisfy the mind that their conclusion was correct, the verdict will not be disturbed. (Merriwether *v.* Dixon, 28 Tex., 18, 19; 7 Tex., 556; 8 Tex., 439; 16 Tex., 94.)

A new trial will not be granted against strong circumstances of equity. (Denniston *v.* McKeen, 2 McLean, 253.)

If a sheriff (and we apprehend the same principle applies to a United States marshal) seize the goods of B, under a

process against A, he is liable for such misapplication. (1 Chitty's Plead., 185; 3 Stark. Ev., 1120; Buck v. Colbath, 3 Wall., 335.)

We suppose it will not be denied that a sheriff or United States marshal executes writs of this character at his own risk, and may require an indemnity bond for his own security; but the taking of such a bond is no satisfaction to the party aggrieved, and does not justify the trespass in any sense, if there be a trespass committed. (Paschal's Dig., art. 151.)

*S. Robinson*, in reply, for appellants.—It has now been settled by the most respectable authority, that under the provisional warrant, the marshal may seize property transferred, in fraud of the bankrupt act, to a third person, and in such person's possession. See Bolander v. Gentry, 36 Cal., 105; Hanson v. Herrick, 100 Mass., 323; Foster v. Hackley & Sons, 2 Bankrupt Reg., 409; *In re* Hussman 2 Bankrupt Reg., 437; also the 13th amended order in bankruptcy, to be found in the sixth, seventh, or eighth edition of Bump on Bankruptcy; Stevenson v. McLanin, vol. 3, No. 30, Central Law Journal.

The brief of the learned counsel for the appellee is devoted almost entirely to argument and authorities in proof of the sanctity of the verdict of the jury, more particularly in cases of fraud. We wish to state our view of this subject.

When a case is appealed to this court, and the appellant complains that, for error in the charge, the real issues involved in the case have not been submitted to or determined by a jury, this court will first ascertain what the issue made by the pleadings is; next, it will examine the evidence, not to determine the issue, but to ascertain if there is evidence tending to prove the side of the appellant upon the issue already seen; if there is such evidence, the court will then look to the charge of the court, to see if the true issue has been submitted to the jury; if it has, unless the verdict is

manifestly contrary to the evidence, the judgment will be affirmed; but if the real issue has not been submitted to the jury, and the appellant has, in the court below, requested such charges as should have been given, then the court will reverse. We do not mean to dictate the method this court should follow in the investigation of any case, but adopt this plan to make clear our views to the court. The verdict of a jury is always responsive, not to the pleadings, but to the charge of the court; the questions they decide are not those that involve the merits of the case, unless they are communicated to the jury through the charge of the court. If the charge of the court in this case submits to the jury the real question in the case, with proper instructions as to the law applicable to that question, then the verdict of the jury is entitled to the highest consideration. But if the charge does not do this, then their verdict is an answer to one question, and the question in this case is a totally different one. Let us state the real question in this case: "Were the transfers which passed the property from the bankrupt to the Gandys valid, as tested by the provisions of section 35 of the bankrupt act?" To submit this question to a jury, it is absolutely essential that the jury should know what the provisions of section 35 are. In this case no such question was submitted, or information given to the jury. We are at a loss to know how to state the question of fraud as submitted to the jury by the court in this case. Certainly, no single provision of section 35 was given to the jury as the means of testing the fairness of the transfers complained of. To say that the court gave the jury the tests provided by the State statute would at least be unfair to the statute. It would be impossible for a learned court to take the charge of the court in this case and decide that any transfer, tested by it alone, could be fraudulent. The court has submitted to the jury this question: "Were these transfers fraudulent?" But every instruction intended as an aid to the jury in determining this question is either erroneous, unintelligible, or wholly irrele-

vant to the case. It is submitted that the issue in the case
has never been passed upon by a jury.

GOULD, ASSOCIATE JUSTICE.—Appellees, B. F. Gandy &
Son, brought this suit against Thomas F. Purnell, United
States marshal, Clifton Witherspoon, his deputy, and sundry
other parties, claiming damages for an- alleged trespass, in
forcibly entering their storehouse, by breaking the locks and
hinges of the door, and seizing and converting to their own
use a stock of groceries and goods, alleged to be the property
of the plaintiffs, and of the value of $4,896.81. They asked
a judgment for damages, including the value of the goods
seized, injuries to the door, disturbance in the possession of
their storehouse, and the interruption and breaking up of
their business as merchants; and in an amended petition
they also claimed damages, on the ground that the trespass
was committed maliciously, and with intent to injure the
plaintiffs.

In the answer, it was alleged that the goods seized were in
fact the property of one Samuel F. Spencer, against whom
proceedings had been commenced by some of the defendants,
to force him into involuntary bankruptcy, and that the goods
were seized by virtue of a writ of seizure issued by the United
States District Court for the western district of Texas, com-
manding the marshal to take possession of all the estate of
said Samuel F. Spencer, both real and personal. It was
alleged that the storehouse was entered lawfully, without
damage thereto, and with the use of only such force as was
necessary and lawful in the execution of the writ of seizure;
and that the goods were held by the marshal for the benefit
of the assignee in bankruptcy of said Samuel F. Spencer's
estate, he having been, in November following the seizure,
adjudicated a bankrupt. The answer charged that shortly
before the seizure, and in the same month, Samuel F. Spen-
cer, with intent to defraud his creditors, transferred the goods
seized, being his entire stock, to his brother, L. M. Spencer,

who, it is alleged, was a participant in the fraud, and who, in the same month, made, without consideration, a pretended transfer thereof to plaintiffs, who are also charged with notice and knowledge of all the facts alleged. It was further alleged that the transfer by Samuel F. to L. M. Spencer was made in payment of an alleged debt, in which the said L. M. Spencer, by the procurement of his brother, had sued out a writ of attachment, and caused the same to be levied on said goods; that said payment was made within four months before the commencement of proceedings to put his estate into bankruptcy; was made when he was insolvent and in contemplation of bankruptcy, and that L. M. Spencer received the same, knowing that Samuel F. was insolvent and in contemplation of bankruptcy; that said payment or conveyance was in fraud of the bankrupt law, and null and void, and that Gandy & Son bought with notice and knowledge of all the facts.

This is a sufficient statement of the pleadings to show that, under the pleadings of both parties, the property in the goods was a material issue. Without entering into the details of the evidence, it is sufficient to say that there was evidence tending to establish that the transfer between the Spencers was void under the provisions of the bankrupt act, as alleged in the answer, and tending to establish that Gandy & Son had notice of that fact.

Under this state of the pleadings and evidence, it was certainly the duty of the court, at all events where requested to do so, to have instructed the jury as to the effect of the bankrupt act on the transaction between the Spencers. A charge substantially in the terms of the 35th section of that act was asked, but was refused. The charge, as given, contains no direct reference to the bankrupt law, and gave the jury no information as to what facts would, under that law, make the payment or conveyance by Samuel F. to L. M. Spencer fraudulent and void. The jury are told that "any conveyance out of the usual and ordinary course of business is *prima facie*

evidence of fraud; but such conveyance will admit of explanation. A preference given to creditors by a debtor, unless such preference perpetrated a wrong and injury on some person, is not fraud as contemplated by law, but such preference is to be closely scrutinized, in order to ascertain whether or not such transaction is free from fraud." As this charge was not accompanied by any further information as to what sort of a preference was wrongful under the bankrupt law, it is evident that the jury may have passed on the validity of the conveyance between the Spencers, as if it depended solely on the existence of such actual fraud as would suffice to defeat it, without reference to the bankrupt act. It is equally evident that the jury may not have passed on the question of whether Gandy & Son bought the goods with notice of facts, which would defeat their title, because that question depended on the other which preceded it. Various instructions on the subject of notice, which were appropriate under the bankrupt act, were asked and refused.

Because the court refused instructions necessary to the proper determination of the issue of property, and because the verdict for damages may have been based on the conclusion of the jury, that the property in the goods was in Gandy & Son, the judgment must be reversed.

In reversing the judgment on this ground, no opinion is intimated as to whether the writ of seizure justified an entry into the storehouse of Gandy & Son, by breaking the door, nor yet, upon the further question as to whether, in the event the goods were seized after an illegal entry, the property in the goods could still be shown in mitigation of damages.

The first assignment of error relates to questions which will probably again recur on another trial, and should be noticed.

Objections were made to interrogatories, on the ground that they were leading, and on the ground that the answers were conclusions of law; and the court refused to entertain them, because they were not taken in writing before the

commencement of the trial. Such objections to interrogatories and answers are not of the class which go only to the form and manner of taking the depositions, and are not therefore required to be made in writing and before the trial.

The witness Duke was asked to "state whether or not the transfer of said goods was a fair and just transaction in payment of said debt," and answered: "The transfer was fair and just, to the best of my knowledge and belief." We think that this question and answer were alike objectionable, as calling for, and eliciting the conclusion of the witness as to a matter of opinion or of law, and not as to any distinct fact.

The judgment is reversed and the cause remanded.