## SUDERMAN & DOLSON V. NORMAN WOODRUFF.

### Decided October 19, 1907.

**1.—Master and Servant—Assumed Risk.**

In a suit by a servant for injuries caused by the breaking of a rope and the falling of a chute, it was the duty of the master to use ordinary care in the selection, maintenance and inspection of the rope; but a failure by the master to inspect the rope would not render the master liable for injuries resulting from its breaking if the defect which caused the injury would not have been discovered by a proper inspection. Such occurrence fell in the category of assumed risks.

**2.—Personal Injuries—Pleading.**

In a suit for personal injuries the allegations of plaintiff's petition were that plaintiff "was struck by said chute on the head and rendered un-

conscious and that he received severe cuts, wounds and bruises, and was hurt in the neck, shoulders and spine. . . . That his neck and spine are injured for life." Defendant's special exception to the effect that "the allegations with regard to the injuries do not specify the nature of the alleged hurts in the neck, shoulders and spine as it should do," should have been sustained.

### 3.—Concurring Negligence.

Where an injury is caused by the concurring negligence of the master and plaintiff's fellow servants, the master is liable.

Error from the District Court of Galveston County. Tried below before Hon. Lewis Fisher.

*James B. & Charles J. Stubbs* and *M. H. Royston,* for plaintiffs in error.—The court erred in refusing to give special charges No. 1B and No. 2, requested by defendants. Hirsh v. Ashe, 35 Texas Civ. App., 495; Galveston, H. & S. A. Ry. Co. v. Perry, 36 Texas Civ. App., 414; Fordyce v. Yarborough, 1 Texas Civ. App., 265.

*Marsene Johnson* and *John C. Walker,* for defendant in error.

McMEANS, ASSOCIATE JUSTICE.—This suit was by Norman Woodruff against Suderman & Dolson and the Southern Pacific Terminal Company to reco·er damages for personal injuries received by him while employed by Suderman & Dolson in loading the steamer "El Dia."

Plaintiff alleged in his petition that while he was working in the hold of the ship the rope, which fastened a wooden chute leading into the hold, broke and the chute fell upon him; that defendants did not secure the upper end of the chute with a strong and sufficient rope, or other fastening, as it was their duty to do, and that in the course of the loading the chute was thrown out of position into the hold by a slingload of cargo striking the rope, which should have secured the· chute and prevented its falling; but that the rope was old, worn and rotten, and wholly insufficient for the purpose for which it was used and broke as the result of the blow, which defendants ought to have known, and the breaking of the rope allowed the chute to fall, striking plaintiff and injuring him. It was further alleged that defendant's vice-principal had been warned that the chute, with its method of fastening, was unsafe and liable to cause injury to persons working in the hold. The suit was dismissed as to the Southern Pacific Terminal Company.

Suderman & Dolson answered by general demurrer, special exceptions and general denial, and also pleaded contributory negligence and assumed risk of plaintiff and the negligence of his fellow servants in the handling of the cargo in allowing it to strike violently against the chute.

A trial by jury resulted in a verdict and judgment for plaintiff for $1,250.

The evidence shows that Suderman & Dolson were engaged in the business of loading steamships at Galveston, and that Woodruff was in their employment. On the day he claims to have been

injured he was working in the hold of the steamer "El Dia," his particular duty at the time being to remove bags of wool as they were lowered through the hatchway by means of a rope operated by a winch. The rope thus used was called a "sling" and each load, consisting of two bags, was called a "sling-load." It appears that in addition to loading with wool the same hatchway was also being used for the loading of sugar, the method being to send the sugar to the hold by sliding it on the chute, one end of the chute being placed on the hatchcombing and the other end extending into the hold. The chute was secured by a rope which was attached to the upper end, and then tied to a stanchion, the purpose of thus securing it being to prevent it falling and injuring those working below. The chute was made of timber and its weight was variously estimated at between 250 and 300 pounds. At the time of the accident a slingload of wool as it was being lowered into the hold came in contact with the chute and this caused the rope to break and the chute to fall on Woodruff, injuring him.

By their twelfth and thirteenth assignments plaintiffs in error complain of the refusal of the court to give their special charges Nos. 1B and 2, the first of which is as follows:

"Should you believe from the evidence that the rope was old, worn and rotten and that such defects, or either of them, caused it to break when the chute was struck, the plaintiff could not then recover unless you should further find, from the evidence, that such defect, if it existed, was known to the foreman Southerland, or to defendants, or their vice-principal, or could have been known to him or them in the exercise of ordinary care."

Special charge No. 2 reads: "Notice of the chafed condition of the rope at the chute would not be notice of a defect in the middle of the rope where it parted, if there was such a defect, and if such defect existed, defendants would not be responsible for the result thereof, unless it could have been discoverable by the exercise of ordinary diligence or was an obvious defect."

There was testimony to the effect that the rope was old, worn and rotten and that it was chafed where it was attached to the chute and that the attention of Southerland, the vice-principal of plaintiffs in error, had been directed to it. This he strenuously denied. It was also shown that the rope did not break at the place where it was chafed, and there was evidence to the effect that the rope was apparently sound and sufficient for the purpose for which it was being used, and that it broke, not because of any of the named defects, but because a slingload of wool in being lowered into the hold violently struck the chute and jerked the rope against the sharp edge of the hatchcombing, thereby partly cutting and partly breaking it and causing the chute to fall.

The inquiries directed by the general charge were, first, as to the use of ordinary care in selecting and installing the rope and, second, as to the exercise of such care in maintaining the same. In so far as it submitted the issue of negligence *vel non* of defendants with respect to the rope it did not touch upon the inquiry as to defendants' knowledge of the defect or put the question whether

they could have known of it by the exercise of ordinary care. If the defects in the rope were such as to be undiscoverable by an inspection made with ordinary care then Suderman & Dolson would not have been guilty of negligence in permitting its use. Again, in addition to the other risks assumed by Woodruff as incident to his employment he also assumed the risk of such defects in the rope as would not have been disclosed to his employers by an inspection conducted with ordinary care. It is not essential that his employers failed to discover the defect after making an inspection with the degree of care required by law, for if his employers had not inspected the rope at all, yet if the defect which caused the accident would not have been discovered by a proper inspec-tion, it fell in the category of assumed risks. Galveston, H. & S. A. Ry. Co. v. Perry, 36 Texas Civ. App., 414. The requested charges directly applied the law to the facts of the case and should have been given.

The fourth special exception to the petition should have been sustained. It reads: "The allegations with regard to the injuries do not specify the nature of the alleged hurts in the neck, shoulders and spine as it should do." The allegations are that plaintiff "was struck by said chute on the head and rendered unconscious, and that he received severe cuts, wounds and bruises, and was hurt in the neck, shoulders and spine. . . . That his neck and spine are injured for life." The petition nowhere alleges the nature, character and extent of the injuries to the neck, shoulders and spine, nor does it allege that a more specific description of said injuries could not be given. "In stating his injuries the plaintiff should set out the actual known facts of injury and their conse-quences. They should be alleged with as much reasonable cer-tainty as their nature and character permit, so as to advise the opposite party of the extent of the injury, the basis for damages and the character of proof to expect. If the nature, character and extent of the injuries can not, for any reason, be stated, then the petition should so state." Dallas C. E. St. Ry. v. McAllister, 41 Texas Civ. App., 131; Dallas C. E. St. Ry. Co. v. Ison, 37 Texas Civ. App., 219.

The contention urged in the tenth assignment that the charge should have exonerated defendants unless the jury should believe from the evidence that defendants had failed to use ordinary care in the selection and maintenance of the rope, instead of charging, as it did, that if they so believed that defendants used ordinary care in the selection and maintenance to find for them, is without merit. There is no substantial difference in the meaning between the expressions "used ordinary care" and "did not fail to use ordi-nary care."

The refusal to give defendants' special charge No. 3 is raised by the fourteenth assignment of error. The evidence tended to show that the rope attached to the chute was defective and insufficient for the use to which it was applied and that defendants were neg-ligent in its selection and maintenance. If the breaking of the rope and the consequent injury of plaintiff was due to the concurrent

negligence of the master in selecting and maintaining the rope and to the negligence of plaintiff's fellow servants in the manner of its use, the master would be liable. The requested instruction did not make this distinction nor incorporate this principle, and the trial court correctly refused to give it in charge to the jury.

We have considered all the other assignments and find no reversible error in any of them.

For the errors indicated the judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded.*