**HARRIS et al. v. SADLER et al.**
No. 12713.

Court of Civil Appeals of Texas. Fort Worth.
Oct. 22, 1932.

Rehearing Denied Dec. 3, 1932.

Slay & Simon, of Fort Worth, and Seay, Seay, Malone & Lipscomb, of Dallas, for appellants.

Todd & Crowley, Arthur Lee Moore, and Tom C. McMurray, all of Fort Worth, Sam Cleveland, of Granbury, and Ernest W. Belcher, of Stephenville, for appellees.

**DUNKLIN, J.**

This appeal is prosecuted by Dr. Chas. H. Harris, C. W. Barrier, Will S. Horn, R. P. O'Bannon, S. A. Woodward, and George R. Enloe, from a judgment rendered against them as defendants in favor of Mrs. J. M. Sadler and her husband, J. M. Sadler, plaintiffs, for damages alleged by them to have resulted from a surgical operation performed on plaintiff Mrs. Sadler.

The record shows that the defendants maintained a hospital in the city of Fort Worth known as the Harris Clinic Hospital, where they were engaged in the practice of medicine and surgery, and on or about July 3, 1929, the plaintiff, Mrs. Sadler, went to the hospital for treatment, where, after an examination and test made by the defendants, her ailment was diagnosed as an infected bladder and an infected appendix, on each of which organs an operation was necessary. The defendants operated on her for those ailments on July 6, 1929, making the necessary incision in her side for that purpose. On July 7, 1929, she developed pneumonia, from which she recovered in a few days. On July 22, she had a hemorrhage, and it was necessary to pack the wound, which packs were later removed on July 27th. On July 28th, the wound was again packed, and this packing was removed and the wound dressed on August 3d. On August 4th, she left the hospital and returned to her home. After her return home, which was on a farm near Granbury, she was under treatment of her family physician, Dr. Carmichael, for quite a while; such treatment being in connection with the condition of the incision made in Mrs. Sadler's side. On advice of Dr. Carmichael, and on account of the fact that the incision had not fully healed but was still draining, she returned to the defendants' hospital in Fort Worth on March 29, 1930. On that date the defendant Dr. Harris examined the wound made by the incision and removed the scab that had formed thereon and also made an exploratory examination of the inside of the incision to discover and remove the cause of the infection, evidenced by the discharge from the wound, and immediately after that treatment, she returned to her home after instructions from Dr. Harris as to how to properly care for herself.

According to allegations in plaintiffs' petition, the defendants negligently failed to remove from the incision so made in Mrs. Sadler's side a piece of cloth which had been used in packing the wound after the operation was performed, and, as a result of the presence of the cloth, the wound became infected, and as a result thereof she sustained great physical and mental suffering; and she sought a recovery of damages therefor.

In addition to certain special exceptions, which will be hereinafter referred to, and a plea of general denial, the defendants presented a special plea asserting that the injuries of which Mrs. Sadler complained, if sustained by her, were the result of other ailments with which she had been theretofore afflicted, and which were the sole cause of the injuries alleged in her petition. And there was a further special plea of contributory negligence on the part of Mrs. Sadler in failing to return to the hospital for further treatment prior to the day she did return, as she had been instructed and advised by the defendants to do, and in further failing to procure medical treatment for her wound before returning to the hospital.

Following are the special issues submitted to the jury, with their findings thereon:

"Special Issue No. 1. Question: At the time that the plaintiff, Mrs. J. M. Sadler, left the Harris Hospital on August 4th, 1929, do you find from a preponderance of the evidence that there had been left in the incision which had been made in her abdomen a rag, gauze or packing? Answer 'Yes' or 'no.'

"Answer: Yes.

"Special Issue No. 2. If you have answered No. 1 'no,' then you need not answer this question, but if you have answered the same 'yes,' then answer this question:

"Question: Do you find from a preponderance of the evidence that said rag, gauze or packing, if any you have found in answer to Question No. 1 above, caused the plaintiff, Mrs. Sadler, to suffer any injury and damages? Answer 'yes' or 'no.'

"Answer: Yes.

"Special Issue No. 3. If you have answered Question No. 1 above 'no,' then you need not answer this question, but if you have answered the said issue 'yes,' then answer this question:

"Question: Do you find from a preponderance of the evidence, that the act, if any, on the part of the defendants, their agents, servants, or employees, in leaving said rag, gauze or packing, if any you have found, in the incision in question was negligence, as that term is defined for you above? Answer 'yes' or 'no.'

"Answer: Yes.

"Special Issue No. 4. If you have answered Special Issue No. 2 above 'yes' and have further answered Special Issue No. 3 'yes,' then you will answer this question, but if you have answered either of said questions 'no,' then you need not answer this question:

"Question: Do you find from a preponderance of the evidence that the negligence, if any you have found as above inquired about, was the proximate cause, as that term has been defined for you above, of the injury and damages, if any you have found? Answer 'yes' or 'no.'

"Answer: Yes.

"Special Issue No. 5. Question: Do you find from a preponderance of the evidence that the injuries and disabilities, if any, which the plaintiff, Mrs. J. M. Sadler sustained were the result of an infection that set up solely from the diseased condition of her body at the time of the operation? Answer 'yes' or 'no.'

"Answer: No.

"Special Issue No. 6. Question: Do you find from a preponderance of the evidence that the foreign matter which was removed by Dr. Harris in March of 1930, consisted only of some threads in a scab which he took off the wound on Mrs. Sadler? Answer 'yes' or 'no.'

"Answer: No.

"Special Issue No. 7. Question: Do you find from a preponderance of the evidence that the plaintiff, Mrs. J. M. Sadler, was instructed to report back to the defendants after she left the hospital on August 4th, 1929? Answer 'yes' or 'no.'

"Answer: No.

"Special Issue No. 8. Question: Do you find from a preponderance of the evidence that Mrs. J. M. Sadler was guilty of negligence, as that term is defined for you above, in failing to report back to the defendants after she left the hospital on August 4th, 1929? Answer 'yes' or 'no.'

"Answer: No.

"Special Issue No. 9. If you have answered Question No. 8 'no' then you need not answer this question, but if you have answered 'yes' to the said question, then answer:

"Question: Do you find from a preponderance of the evidence that the injuries and disabilities, if any, which the plaintiff, Mrs. J. M. Sadler sustained were caused solely by reason of her negligence, if any you have found, in failing to report back to the defendants after she left the hospital August 4th, 1929? Answer 'yes' or 'no.'

"Answer: _____.

"Special Issue No. 10: If you have answered special issue No. 2 above 'no,' then you need not answer this question, but if you have answered the same 'yes,' then answer this question:

"Question: How much damages, if any, do you find from the evidence was sustained by the plaintiff, Mrs. J. M. Sadler, as a proximate result of there having been left in her incision a rag, gauze, or packing, if any you have so found in answer to Question No. 1?

"For your guidance in answering this question, you are instructed as follows:

"In estimating the damages, if any you find from the evidence sustained by the plaintiff, Mrs. J. M. Sadler, upon the occasion in question, as a proximate result of a rag, gauze, or packing, if any, having been left in her incision, then you may state what amount of money, if paid now, in cash, in your judgment, will fairly and reasonably compensate the plaintiff, Mrs. J. M. Sadler, for the physical pain, if any, and the mental anguish, if any, endured by her as a proximate result of a rag, gauze or packing having been left in her incision, if any you have found, from the time she left the hospital on August 4th, 1929, up to the present time; and if you further believe from the evidence that as a proximate result of their having been left in her incision a rag, gauze or packing, if any you have found, that in reasonable probability the plaintiff, Mrs. J. M. Sadler, will thereafter suffer physical pain or mental anguish as a proximate result of there having been left in her incision a rag, gauze or packing, if any you have found, then you may take those matters into consideration, in estimating the damages if any you find for Mrs. J. M. Sadler, and in estimating the damages, if any you find, you will only take into consideration and consider the elements which has been set forth above for your consideration.

"Answer: Ten thousand dollars ($10,000.00)."

Plaintiffs' petition embodied these allegations:

"That at the time of said operation said plaintiff was a woman fifty years of age and that prior thereto she had been strong and in good health but that since said operation and on account of the leaving of the said cloth or rag in the incision as aforesaid that she has become weak and her entire health has become greatly damaged and undermined, her nervous system has been greatly impaired and her life has been shortened, that all of such injuries have been accompanied with great mental pain and anguish, that all of such injuries are permanent and will continue for the rest of her life, and that she will in the future suffer great pain and anguish therefrom all to her great and permanent damage in the sum of $35,000.00."

The defendants complain here of the overruling of their two special exceptions to those allegations, reading as follows:

"They specially except to paragraph 6 of said petition wherein the plaintiffs simply sue for a lump sum of $35,000.00, for the reason that it fails to set out and itemize upon what the $35,000.00 damage is predicated, and fails to state of what items the said $35,000.00 consists, and of this special exception the defendants pray judgment of the court.

"They specially except to that part of paragraph 6 of said petition, wherein it is alleged that the plaintiff will suffer pain and mental anguish in the future, for the reason that it is not alleged that damage from such suffering is reasonably probable, and for the further reason that such an allegation and such facts are too uncertain and indefinite on which to base a measure of damages or a recovery of damages, and is immaterial and

is calculated to inflame the minds of the jury and should be stricken out, and of this special exception the defendants pray judgment of the court."

It is insisted that the defendants had the right to be put upon notice of the respective amounts plaintiffs sought to recover for the different elements of damages thus alleged in the petition. Authorities cited by appellant include the following: Sedberry v. Verplanck (Tex. Civ. App.) 31 S. W. 242; Randall v. Rosenthal (Tex. Civ. App.) 31 S. W. 822; Dallas Consol. Electric Co. v. Hardy (Tex. Civ. App.) 86 S. W. 1053; Suderman & Dolson v. Woodruff, 47 Tex. Civ. App. 229, 105 S. W. 217; Cisco Oil Mill v. Van Geem (Tex. Civ. App.) 166 S. W. 439—all of which announce the general rule that one seeking relief must set forth the grounds upon which it is based and also the amount sought to be recovered, in order that the opposite party may be apprised of his demand.

■ But the announcement in those former decisions, to the effect that an erroneous ruling in sustaining or overruling special exceptions to a pleading which are not in effect a general demurrer will result in a reversal of the judgment upon the theory of presumed injury to the complainant, has now been changed by an unbroken line of later decisions cited in support of the text in 3 Texas Jurisprudence § 878, p. 1254, in part as follows: "An error in overruling a general demurrer is fundamental and therefore essentially prejudicial. But the improper overruling of a special exception may or may not be prejudicial, and the burden of showing prejudice is cast by the rule upon the appellant; the error is not presumed to have been harmful, and consequently to constitute reversible error, in the absence of a definite showing of injury. More precisely, the appellant must show that the error has probably led to an improper judgment, that some rule of procedure in his favor has been violated, or that, owing to want of fullness or particularity of pleading, he was taken by surprise by the evidence introduced, defects in the pleadings, or allegedly erroneous orders sustaining, overruling, or striking special exceptions to the pleadings."

And in Tex. Jur. Supp. (1931) pp. 132, 133, a number of other decisions are cited to the same effect. Also see 3 Tex. Jur. pp. 1246–1253.

■ And since the record shows that, when confronted with the testimony introduced by plaintiffs to prove the alleged physical and mental suffering and damages resulting therefrom, appellants did not claim surprise and seek a continuance for the purpose of procuring testimony to rebut that offered by plaintiffs, but proceeded to offer testimony at great length in denial of that offered by plaintiffs, with no claim made on the trial or in their motion for new trial that they had other testimony which was not offered, no injury is shown as a result of the ruling complained of, and therefore the assignments now under discussion are without merit.

■ Depositions of Dr. Carmichael were introduced in evidence, and following is an interrogatory with the answer thereto: "Q. Did you or not again see Mrs. Sadler after you had at first advised her to return to Dr. Harris, if you did so advise her, and if so, about how long thereafter? A. I saw her again after I had first advised her to return to Dr. Harris. I advised her about 6 or 7 months thereafter, and she was unable to go."

Error has been assigned to the action of the court in overruling objections offered by appellants to the introduction of that answer, on the ground that the statement in the answer, "and she was unable to go," was not in response to the question.

In 15 Texas Jurisprudence, p. 76, the following is said: "It is held in a long line of decisions that the objection that an answer to an interrogatory is unresponsive is one that goes to the manner and form of taking the deposition and must be made in writing and on notice, the objection coming too late at the trial."

Appellants cite such decisions as Purnell v. Gandy, 46 Tex. 190, Woosley v. McMahan, 46 Tex. 64, and Lindsay v. Jaffray, 55 Tex. 626, to support their contention that the objection now under discussion did not go to the manner and form of taking the deposition and therefore was permissible though made for the first time orally when the deposition was offered. We shall not undertake to determine whether or not the decisions so cited present a different holding from those referred to in Texas Jurisprudence, since it is clear that Dr. Carmichael, being a practicing physician who had treated the wound of Mrs. Sadler, was qualified to give his opinion, contrary to another objection; and, his opinion so given being competent testimony, appellants have shown no injury by the ruling complained of; and, under the doctrine announced in 3 Texas Jurisprudence, cited above, that ruling did not constitute reversible error, at all events.

For the same reasons we overrule a further assignment of error to the refusal of the trial court to sustain the same objections and on the same grounds to another answer of Dr. Carmichael, to the effect that Mrs. Sadler was unable to go back to the defendants' hospital after she had first returned to her home.

■ In the court's charge, this definition was given: "By the term, Proximate Cause, as used in this charge, is meant that cause which in a natural and continuous sequence, unbroken by any new independent cause, produces the injury complained of and without

which the injury in question would not have occurred, and from which it ought to have been foreseen or reasonably anticipated by a person in the exercise of ordinary prudence that the injury complained of or some similar injury would result naturally and probably in the light of the attending circumstances. There may be more than one proximate cause. 'New Independent Cause' as used in the above definition is a cause or agency over which neither the defendants nor the plaintiffs have any control, and which cause or agency a person of ordinary prudence under the same or similar circumstances would not have reasonably foreseen, as likely to occur and bring about the result complained of, and which cause is of itself sufficient to produce the injury in question."

To the giving of that definition, the defendants presented the following exceptions:

"(1) Because such definition erroneously requires that it be such a cause as a person of ordinary prudence would not reasonably have foreseen as likely to occur and bring about the result complained of, whereas, as a matter of law, to be a new and independent cause this is not necessary, but it is sufficient if it be a cause over which defendant had no control and which is of itself sufficient to produce the injury in question.

"(2) Because some act of the plaintiff, over which these defendants had no control, could have been a new and independent cause so far as these defendants are concerned, but under the definition herein complained of it must have been some cause over which neither of the parties had any control.

"(3) Because said definition requires that such cause must of itself be sufficient to produce the injury in question, when, as a matter of law, it is not necessary that the new and independent cause be the sole and sufficient cause of the injury."

If plaintiff's injury resulted solely from some independent agency or condition which was not brought about either directly or indirectly by any default of the defendants, then the same would be deemed an independent cause of such injuries, whether or not plaintiff had control over such condition or agency, and independently of the further question whether or not, in the exercise of ordinary care, she should have foreseen injuries complained of as a probable consequence; and in that respect the definition in question was erroneous. 22 R. C. L. § 18, p. 132, and section 26, p. 142. However, that error in the instruction is not a sufficient ground for a reversal of the judgment, since, as shown by the verdict, there was a specific finding by the jury that the injuries and disabilities for which Mrs. Sadler sued were not the result of an infection that set up solely from the diseased condition of her body at the time of the operation. That diseased condition of Mrs. Sadler was the only independent cause of her

alleged injuries that was pleaded by the defendants; nor did the evidence introduced suggest any other. The contributory negligence of plaintiff pleaded by the defendants could not be deemed an independent cause, since necessarily it involved the concurring alleged negligence of the defendants; and the defense of contributory negligence was rejected by the jury, as shown by the verdict.

The record shows that defendants seasonably presented the following exceptions to the court's charge:

"These defendants object and except to special issue No. 10, and particularly that portion of it which permits the jury to award damages for any physical pain or mental anguish which the plaintiff may have suffered up to the present time, when there is no evidence to support any recovery up to the present time but on the contrary all of the evidence including that of the plaintiff, shows that she has completely recovered from said disabilities, if any, at this time, and had recovered within about a period of three weeks from the time she made her second trip to the hospital in March of 1930, and further because said instruction expressly informs the jury that they may take into consideration any physical pain that she may suffer in the future, when there is no evidence to support this element of damage.

"These defendants further object to the said issue as worded, because the said issue permits the jury to take into consideration and expressly instructs them that they will take into consideration any mental anguish which she may suffer in the future, when there is no evidence in the record to support such element of damage."

And assignments of error are presented here embodying the contentions made in those objections. In support of those contentions appellants have cited testimony at length which tends strongly to show that, after the end of a period of three weeks following Mrs. Sadler's dismissal from the hospital the second time, there was a complete recovery by her from the infected condition of the incision and that thereafter she enjoyed good health, was able to perform her household duties, and suffered no further inconvenience or disability, and that up to the date of the trial she suffered no further physical or mental pain, and that there is no reasonable basis for a finding that she will sustain any such in the future.

In their briefs, appellants admit that the evidence was sufficient to sustain a finding of physical and mental pain prior to the expiration of the three weeks following Mrs. Sadler's return home from her second trip to the hospital, but the point they stress under these assignments is that the evidence fails to show that any such physical and mental suffering continued up to the time of the trial and fails to show any probability of such suffering in

the future. The following are some excerpts from Mrs. Sadler's testimony concerning her condition after she had returned home from her second trip to the hospital:

"Q. Well, after that (her return home from the second trip to the defendant's hospital) did your wound ever heal after that? A. Well, it was about two weeks that it turned black, and they had to work with me dreadfully for two weeks, to save my life. During that time I had a high fever. By the time that I got home, after having left the hospital on this occasion, I had a fever that was so high that I did not know much what I was doing. I had pain all the time.

"Q. Now, after that two weeks period of time, tell the jury something about your condition. A. Well, after the two weeks, after they got the blood poisoning down and out, why, it healed up, and it never gave me any more trouble since. My wound healed up, the incision place healed up, and it never has rose any more.

"Q. How about your eating after that? A. I got so that I could eat all right.

"Q. Well, tell the jury something about your general condition, your general health, and how you got along about that time? A. Well, I have been so nervous ever since, I can hardly stand for any little racket, it just goes all over me, just shoots through me, my nervous system is all broken up. I was not nervous before the first operation was performed on me. I stood everything fine.

"Q. Now, after this piece of gauze was removed, after those two weeks period of time, after you got back home, did you get to where you could do your housework? A. Well, I could do my housework, just what little housework I have to do now, Mr. Sadler and I, and what I cannot do, I leave undone; we don't have to have anybody to help us.

"Q. Are you able to get around all right now? A. Well, I get around, but still I suffer with nervousness.

"Q. Can you give the jury some idea about how this nervousness affects you? A. Well, whenever any little excitement comes, or little knocking or something comes, why it just goes all over me, and makes me very weak, and I have to lay down, sit down, or fall down, any shock of any kind.

"Q. How is your sleeping now? A. Good, pretty good, considering."

Mrs. Sadler further testified that before the operation she weighed 210 pounds and still weighed 210 pounds, but that "as to whether or not I am a pretty vigorous and healthy woman now, I will say 'no sir,' I have no strength. I can sort of do the house work that Mr. Sadler and I have. I reckon I do weigh as much as I ever did."

She further testified that her appetite was not altogether good; that she does not sleep extra well, but sleeps well enough, although unable to lift or carry anything.

Under the rule of decisions announced in 13 Texas Jurisprudence, § 270, p. 464, and section 274, p. 474, we are unable to say that the objections noted above to the court's instruction on the measure of damages present reversible error. See, also, 17 C. J. § 151, p. 828.

Nor are we able to say, as appellants insist, under all the facts and circumstances in evidence, that the amount of damages awarded by the jury is manifestly so excessive as to show that in assessing the same the jury were influenced by bias and prejudice, and that therefore this court should decree a reversal of the judgment and a remand of the case for another trial. 13 Tex. Jurisprudence, pp. 464, 474, 484.

The remaining assignments of error present complaints of improper arguments to the jury by counsel for plaintiffs. At the outset, it is to be noted that none of the objections to the arguments which are presented here was made at the time of the trial, but each bill of exception thereto contains specific recital that "the objection to the argument was made for the first time in defendants' motion for new trial." The motion for new trial was heard and overruled nearly two months after the trial. The decisions in Willis & Bro. v. McNeill, 57 Tex. 465, Floyd v. Fidelity Union Casualty Co., 24 S.W.(2d) 363, by the Commission of Appeals, and Texas Indemnity Ins. Co. v. McCurry, 41 S.W.(2d) 215, 78 A. L. R. 760, by the Commission of Appeals, with express approval by the Supreme Court, all announce the rule that it is the duty of the trial court in the first instance to require counsel to "confine the argument strictly to the evidence and to the arguments of opposing counsel," as provided by rule 39, "Rules for District and County Courts," and that objections to improper arguments may be made to the court for the first time after the conclusion of the argument, and that it is the duty of the court to then exclude the argument if improper. However, we have been cited to no decision and have found none holding that objections to arguments of counsel may be made for the first time in a motion for new trial. Manifestly, it is then beyond the power of the trial court to instruct the jury not to consider the argument; and it is our conclusion that, by reason of that fact, the right to complain of the arguments as improper was waived. Moreover, we have examined all the arguments complained of which are shown in bills of exception and are convinced that none of them shows reversible error, especially in view of the qualifications appended to some of the bills showing that the arguments therein set out were in reply to arguments of like kind by counsel for the defendants. And the bills of exception not so qualified embody, in part, remarks

which were clearly warranted by the evidence, while the objections made were to the arguments as a whole without segregating those portions stressed in appellants' briefs as prejudicial, from other remarks shown in the bills which were warranted.

For the reasons noted, all assignments of error are overruled, and the judgment of the trial court is affirmed.

### On Motion for Rehearing.

In Floyd v. Fidelity Union Casualty Co., 24 S.W.(2d) 363, opinion by the Commission of Appeals, which was cited in our opinion on original hearing, it was said in part: "Improper argument injecting into the case matters de hors record that are inflammatory, and calculated to prejudice rights of losing party before jury, may, in proper case, be complained of on appeal, although objection was urged for first time in motion for new trial."

But the argument there complained of was objected to at the time it was made, and, upon objection thereto, it was excluded from the jury by an instruction from the court; the objection was not made for the first time in motion for new trial. Hence the announcement just quoted was not really called for in that case, and was overlooked by us on original hearing. The improper argument there referred to was a comment on evidence which had been offered and excluded by the trial court. Hence that decision is clearly distinguishable from this case.

In Robbins v. Wynne, 44 S.W.(2d) 946, 949, an opinion written by Justice Critz of the Commission of Appeals, with express approval by the Supreme Court, presents an extended and instructive discussion of many prior decisions with respect to improper argument. In that case the court sustained an assignment to an argument made by counsel as to what a witness would have testified if she had been permitted to do so. It was held that, as a matter of law, that argument was calculated to injure the other side and was misconduct which would necessarily result in a reversal for the same reason as would govern where the jury hears evidence outside of the record while it is deliberating on a verdict.

In discussing assignments to other arguments alleged to be improper, it was held that it is not always necessary for the complaining party to object to an improper argument at the time it is made in order to reserve the right to complain of the same on motion for new trial and on appeal, as error, following the decision in Willis & Bro. v. McNeill, 57 Tex. 465. But in that connection the court said: "We hold that the correct rule is that, if the argument be such, or is made under such circumstances that, if objection is made at the time counsel making the argument can offer explanation therefor which will render such argument proper, or can make such amends as will render the same undoubtedly harmless, or; if the argument be of such a nature that its proper withdrawal by counsel or instructions by the court to the jury to disregard will cure the error, and render its harmful effect free from doubt, then the objections should be made at the time, and failure to do so waives the error. On the other hand, if the argument be such that the converse of the above propositions is true, then it would be idle to say that opposing counsel should object at the time, when the objection might do nothing more than render the improper remarks more damaging than they would be if he remained silent."

The statement made in our original opinion that we had found no decision holding that objection to improper argument can be made for the first time in a motion for new trial, and that failure to object to the arguments complained of in this case prior to the hearing of the motion for new trial was a waiver of right to complain of the argument here is withdrawn. But those arguments complained of which were not provoked by arguments of like kind from appellant's counsel did not refer to facts not introduced in evidence, and were not of such character that any probable injurious effect therefrom could not have been removed and avoided by a withdrawal thereof by counsel or by an instruction from the court; and therefore the failure of appellant to object thereto at the time was a waiver of right to complain of same here, under the last quotation from Robbins v. Wynne, supra, even though it could be said that they were improper.

Appellant insists that the rule that an assignment of error to the admission of testimony as a whole will not be sustained if a part of the testimony is admissible, even though another portion is subject to the objection, is not applicable to arguments of counsel which are complained of as improper. Appellant insists that our holding on that point is not sustained by any decision in this state. Whether or not that be true, we perceive no valid reason for changing our conclusion, since we believe that the same basic reason for the rule just referred to, applicable to the admission of evidence, applies and should apply to such arguments.

With the correction noted, the motion for rehearing is overruled.