## NORTHERN TEXAS TRACTION CO. v. THETFORD et al.

### No. 12289.

Court of Civil Appeals of Texas. Fort Worth. March 22, 1930.

Rehearing Denied May 10, 1930.

Cantey, Hanger & McMahon, of Fort Worth, for appellant.

S. F. Houtchens and J. Harold Craik, both of Fort Worth, for appellees.

CONNER, C. J.

This suit was instituted against the Northern Texas Traction Company by B. Thetford and his wife, Lena Thetford, for themselves and as next friends of Freddie Arthur Thetford, a boy nine years of age, to recover damages for injuries received at a collision between an automobile driven by Mrs. Thetford and a street car of the defendant company. The defendant company operates its line of cars from the business district in the city of Fort Worth to the outlying districts along and over Hemphill street. The line extends north and south, and the accident in question occurred in the 2500 block on Hemphill street. In that block there is a switch constructed for the purpose of permitting cars going in opposite directions to pass one another. Plaintiff's evidence was to the effect that the street car in question was proceeding north, and it entered the south end of the switch and proceeded north along the tracks on the east side until it reached the point where the car again entered the main line, where the accident occurred. At the same time, the plaintiffs, Mr. and Mrs. Thetford, and a young daughter, 12 or 14 years of age, were riding in an automobile loaded in part with household goods; the minor son, Freddie Thetford, was riding on the running board of the car on the east side. The car was proceeding south at a speed of 12 to 15 miles an hour. A short distance north and west of the point where the street car entered upon the main line there was located a grocery store, in front of which was a parkway. From the south boundary line of the parkway along the west curb of Hemphill street were a number of automobiles parked, leaving a distance between the parked automobiles and the west line of the street car tracks of about 6 or 7 feet.

The plaintiffs' evidence is to the effect that at about the time they passed the parkway of the grocery store, some 30 or 40 yards from the point where the switch entered the main line, the driver of the automobile, Mrs. Thetford, saw the street car entering the switch; that when within some 30 feet of the point of the collision the street car was about the middle of the switch coming north, and she thought the street car would stop and she would have time to swing to the left, miss the parked automobiles, and get beyond the point of intersection of the switch and main line, and in making the effort to do so speeded up her automobile to about 18 miles an hour. In doing this the left wheel of her automobile extended either on or just over the west line of the car tracks, and, just as she was passing the point that we have indicated as the point of the collision, the street car, without having checked its speed, came onto the main line, the northwest corner of the street car striking the back end of the automobile about where the back fender was located, and knocked the boy off of the car onto the street, where he was very seriously injured.

The plaintiff, alleged, among other things, negligence on the part of the operator of the street car in traveling at an unlawful rate of speed, in failing to keep a proper lookout, and further that the operator discovered the perilous condition of the plaintiffs and failed to exercise due care to apply the means at his command to avoid the collision.

The defendant company pleaded, besides demurrers and a general denial, contributory negligence on the part of the parents of the boy in permitting him to ride on the running board, in attempting to pass the street car as they did, etc., and also pleaded that the minor boy was negligent in riding on the running board, in failing to warn his mother, the driver of the automobile, of the approach of the street car, etc.

The case was submitted to a jury on special issues. The court defined the terms "negligence," "ordinary care," "proximate cause," and "unavoidable accident," with appropriate charges upon the burden of proof, and instructed the jury that they were the exclusive judges of the credibility of the witnesses and the weight to be given the testimony, etc. The jury answered that the motorman was not using ordinary care to keep a lookout as he drove the street car out of the switch for vehicles approaching from the north, and that such failure was the proximate cause of the injuries to Freddie Thetford; that the rate of speed the street car was being driven as it went out of the north end of the switch was negligence, which was the proximate cause of the injuries; that the motorman saw the plaintiffs' automobile before the contact of the street car with it, and that, after the motorman saw the plaintiffs' automobile, he did not use ordinary care to use all the means at his command consistent with his own and his passengers' safety to avoid the collision, and that such failure to use ordinary care was a proximate cause of the injuries to the boy. The jury further answered that Mrs. Thetford, who was driving the automobile prior to the accident, exercised ordinary care to keep a lookout for the approach of the defendant's street car; that Freddie Thetford was not negligent in riding on the running board immediately prior to the collision; that the act of the parents of Freddie in al-

lowing him to ride on the running board on the occasion in question was not the sole proximate cause of Freddie being thrown from the automobile; that Mrs. Thetford was negligent in attempting to pass the point of collision at the time and in the manner in which she did, but that such negligence was not the sole proximate cause of the collision; that the rate of speed at which Mrs. Thetford was driving on the occasion in question was not negligence, nor was it the proximate cause of the collision; that Mrs. Thetford was not negligent in not driving nearer the west curb of Hemphill street at the place of collision; and that the collision was not an unavoidable accident.

Upon the verdict so rendered, the court entered judgment that the plaintiffs, Mr. and Mrs. Thetford, take nothing by reason of their independent asserted cause of action against the defendant company, but that as next friends of their son, Freddie Thetford, have and recover of the defendant company for the benefit of Freddie the sum of $7,500, with interest at the legal rate from the 9th day of February, 1929. From the judgment so entered, the Northern Texas Traction Company has duly prosecuted this appeal.

We are confronted with a brief in behalf of appellant presenting 50 propositions alleging error in the proceedings below. The brief has been ably prepared and presented, but it seems apparent that we cannot properly discuss and dispose of all the propositions within reasonable limits.

Appellant insists that the court should have granted its request for an instructed verdict (1) on the ground that the undisputed evidence discloses that the minor plaintiff, Freddie Thetford, was guilty of negligence in riding upon the running board of his parents' car with full realization of the danger thereto, and that negligence proximately contributed to cause his injuries; (2) that the undisputed evidence discloses that the father and mother of the minor plaintiff were guilty of negligence in permitting Freddie to ride on the running board, which when taken in connection with the negligence of the minor himself, proximately contributed and was the sole proximate cause of the injuries in question; (3) that the evidence wholly failed to show that the injuries and damages to the minor plaintiff were the proximate result of any negligence upon the part of the operator of the street car; (4) that the evidence wholly failed to show that the minor plaintiff was not possessed of sufficient intelligence and discretion to understand the dangers attendant to riding upon the running board of the automobile, etc.

Numerous objections are presented to the court's charge, to the action of the court in refusing special instructions requested, to the introduction of evidence, and other proceedings too numerous to mention, many of which, however, become immaterial by a proper disposition of the following questions, to wit:

(1) Does the record disclose any material error relating to the issue submitted or evidence introduced relating to appellant's defense that the minor, Freddie Thetford, was guilty of negligence, and is the evidence sufficient to sustain the jury's verdict that he was not guilty of negligence?

(2) If the minor himself was not guilty of negligence proximately contributing to his injury, then was the negligence of his parents, particularly that of Mrs. Thetford, as found by the jury, imputable to their minor son, Freddie, so as to deprive him of a right to a recovery?

(3) Was the issue of discovered peril, as submitted, objectionable?

(4) Does appellant present any material objection relating to the issue of discovered peril, and is the evidence sufficient to sustain the verdict of the jury on that issue?

It seems evident that, if the minor was in peril, and if the operator of the street car discovered his perilous position in time to have avoided the accident by the exercise of ordinary care with the means at his command, then questions relating alone to negligence on the part of Mr. and Mrs. Thetford and of the boy himself become wholly immaterial. So, too, do such questions become immaterial if it be true that the negligence of Freddie's parents is not imputable to him, as urged by appellant, and if it be further true that no error has been presented to the issue or finding of the jury that Freddie himself was not guilty of negligence. We will therefore address ourselves more particularly to an endeavor to properly dispose of the questions last indicated.

■ We will first address ourselves to the issue of the boy's alleged negligence. Objections are made to the court's definitions of negligence, ordinary care, and proximate cause, but we think these charges are in approved form, and that the objections may be overruled without particular discussion. We are of the further opinion that it cannot be said that the minor son was guilty of negligence as a matter of law in riding on the running board at the time and under the circumstances he did. It is true, while testifying as a witness, he stated, among other things, that he knew it was dangerous to ride on the running board, but he was certainly of an immature age, the jury had an opportunity to observe him, his manner, his actual or apparent mental reactions to questions propounded, etc. The evidence further showed that he was riding with his face towards the inside of the automobile. There is no evidence that on previous occasions when he had been permitted to ride on the running board

he had ever come in collision with a passing street car or automobile, or other vehicle, or that he had ever fallen off. He was standing erect holding to the frame of the automobile's top, and the jury may have concluded that the boy's fear of the dangerous consequences, if any, arose because of a possibility of being thrown from the car by its own operation, as was the case of the mother, who testified that she knew it was dangerous for the boy to ride on the running board, but that the danger she apprehended was in his falling off, that she had no thought of his being "side swiped."

In Blashfield's Cyclopedia on Automobiles, vol. 2, page 1064, it is said: "To charge a child with contributory negligence, it must have had the capacity, not only to know the danger ordinarily involved in the conduct alleged to be negligent but to realize and apprehend the risk under the circumstances in which it was placed, and to exercise the judgment and discretion necessary to avoid it.".

In the same volume, page 1067, the author says: "The conduct of a child of tender years should not be measured by the standard of care applied to an adult, because the immaturity of youth ordinarily embraces, not only an imperfect knowledge of natural facts and laws and of the proper relation between cause and effect but, when possessed of those elements necessary to the exercise of reasonable care, it still lacks the discretion, thoughtfulness and judgment presumed to be an attribute of the ordinary prudent adult, and which is said to come only with experience. Thoughtlessness, impulsiveness, and indifference to all but potent and imminent dangers are natural traits of childhood, and must be taken into account in classifying the conduct of a child."

In the case of Brown v. Page, 98 Conn. 141, 119 A. 44, 45, by the Supreme Court of Connecticut, it is said, quoting from the headnote: "Whether contributory negligence could be charged on children five and eight years old injured by an automobile on a highway when they came from concealment behind a wagon was a matter exclusively for the jury."

■ We think that what is said above in the quotations from Blashfield Cyclopedia is well sustained by the authorities generally, as well as those cited in notes to the text, and that, as was determined in the case of Brown v. Page, the issue of the minor's negligence was for the jury. Among other things, appellant insists, in effect, that there was no specific finding that the minor was not possessed of sufficient intelligence and discretion to understand the dangers attendant upon his position, which, it is insisted, was a necessary element that should have been determined by the jury. Under the proposition presenting this contention it is not pointed out that any specially requested issue was requested call-

ing for such a finding, the contention being that the definitions of negligence and ordinary care are too broad and objectionable, in that they did not call for a specific finding as to the injured boy's intelligence and discretion. The court's definitions of negligence and ordinary care were made to apply particularly to the minor, and read as follows:

"Negligence is a failure to use ordinary care, and the negligence of a child is to be measured by the standard of care which an ordinarily prudent child of similar age would exercise.

"Ordinary care is that care which a person of ordinary prudence would exercise under same or similar circumstances and as to a child is that care which a child of ordinary prudence of that age would exercise."

Under these charges it seems to us that in passing upon the issue of the minor's negligence the jury were necessarily called upon to consider the intelligence, circumspection, and care of the minor involved, as measured by the care and prudence of ordinary children of his age. But, if not, the question is purely defensive in its nature, evidentiary and incidental to the issue of the boy's negligence, and that the objection was waived under the decision of Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084. We also feel unable to say that the jury's finding that Freddie Thetford was not guilty of negligence is unsupported by the evidence.

■ Was the contributory negligence of the parents, if any, imputable to the minor child? While the authorities seem conflicting, it is said in 20 R. C. L. page 155, par. 129, that: "According, however, to the very decided weight of authority, the negligence of the parent or guardian having custody and control of an infant in exposing it to danger will not be imputed to the child so as to preclude its right of action against a third person by whose negligence it is injured."

Numerous cases in the notes are cited to support the text.

In Blashfield's Cyclopedia, vol. 1, page 1001, it is said: "By the great weight of authority, negligence on the part of a parent in charge of a minor child cannot be imputed to it so as to prevent recovery by the child from a third person, owning or operating a vehicle colliding with a machine in which it is riding, or striking the child while walking in the street."

The authorities are discussed by Mr. Justice Buck, of this court, in the case of Southwestern Bell Tel. Co. v. Doell, 1 S.W.(2d) 501, in which it was held that the negligence of a driver of an automobile was not imputable to a minor brother six years old.

In the case of G., H. & H. Ry. Co. v. Moore, 59 Tex. 64, 46 Am. Rep. 265, it was held by our Supreme Court that the negligence of a

910

parent in sending her child six years old unattended on an errand which required it to cross a railroad track could not be imputed to the child or affect its right of recovery for the injury sustained. This case was cited in Williams v. T. & P. Ry. Co., 60 Tex. 205, on this point.

In T. & P. Ry. Co. v. Fletcher, 6 Tex. Civ. App. 736, 26 S. W. 446, by the Dallas Court of Civil Appeals, in an opinion by Justice Finley, it was held that the negligence of the mother of a girl seven years old in exposing the child to danger could not be imputed to it.

In the case of Western Union Tel. Co. v. Hoffman, 80 Tex. 420, 15 S. W. 1048, 26 Am. St. Rep. 759, it was held that parents were guilty of negligence in failing to obtain surgical aid for a minor son, age fifteen years, but that such negligence was not imputable to the minor as a matter of law, the question being one for the jury's determination.

■ While, doubtless, cases may be found of contrary import, we think those above cited. and from some of which we have quoted, announce the rule that should be applied in this case, and we overrule all contentions on the part of appellant to the effect that the negligence of Freddie Thetford's parents is imputable to him and precludes a recovery in his behalf, notwithstanding the verdict of the jury that he, the minor himself, was not guilty of contributory negligence. In this connection we will note that, while the jury found Mrs. Thetford, the driver of the car, to have been negligent in attempting to drive past the point of collision at the time and in the manner in which she did, it was yet found by the jury that such negligence was not the sole proximate cause of the collision, it thus appearing that at most the negligence of the mother was but a concurring cause of negligence with that of the street car driver, both operating in injury to the minor child who was without negligence, a condition of the case which, if unaffected by erroneous charges, objectionable evidence, or other erroneous proceeding, supports the judgment below. Markham v. Houston Direct Nav. Co., 73 Tex. 247, 11 S. W. 131; G., H. & S. A. Ry. Co. v. Croskell, 6 Tex. Civ. App. 160, 25 S. W. 486, writ refused; G., H. & S. A. Ry. Co. v. Vollrath, 40 Tex. Civ. App. 46, 89 S. W. 279, writ refused.

■ In addition to what we have said relating to the appellant's contention of imputed negligence, we will notice the further contention of appellant relating to the issue of discovered peril. Appellant first insists that plaintiffs' pleadings are insufficient to support the issue. The plaintiffs, after pleading that the motorman was negligent in not keeping a proper lookout, etc., alleged, in the alternative, that: "If it should develop that said agent, servant, and employee was at said time keeping a lookout, then and in such event

plaintiffs say that defendant by and through its said agent, servant and employee saw plaintiffs in peril, before striking their said automobile and the said Freddie Arthur Thetford, in time in the exercise of ordinary care by the use of all the means at its hand, consistent with the safety of said street car, and the passengers thereon, to have stopped said street car before striking plaintiffs, as herein alleged, or could and would have slowed the same down sufficiently for plaintiffs to have passed the place of compact, and thereby avoided the accident and injuries herein complained of, but plaintiffs say that defendant by and through its said agent, servant and employee neither stopped said street car or slowed the speed thereof just prior to said accident and injuries, after seeing plaintiffs in peril, but negligently and carelessly without stopping, or attempting to stop, slowing down its speed or attempting to slow down its speed, while operating the same in a very careless and reckless way and manner, as aforesaid, ran said street car into plaintiffs and their said automobile, and did the damages, as herein pleaded, which was negligence, which contributed to and was a proximate cause of the said damages and injuries as herein pleaded."

■ A Mr. C. S. Woods testified, among other things, to the effect that he was driving an automobile following the street car; that he saw the plaintiffs' automobile just before the collision took place; that the street car was going some 18 or 20 miles an hour; that when he first noticed the plaintiffs' automobile it was some 25 or 30 feet north of the north point of the switch, and the street car moved about 20 feet going north, and the auto about 10 feet going south, when the accident happened; that automobiles were parked on the west side of the street, which left a narrow space between them and the west line of the switch track; that "it was the left corner of the street car" that came in contact with the automobile; that the car came in contact with the automobile about in front of the rear fender.

He further testified: "As to whether or not there wasn't quite room enough for the automobile to squeeze in between the curb and the street car, I will state there was plenty of room if the street car motorman had been watching his business, and slowed down like he should. He is supposed to slow down in the switch. I said that he was going in that switch at 18 or 20 miles an hour. He didn't do anything except cut off his—there where he cuts off his electricity. I can tell when he checked his speed a little. I knew by the sound of the car."

He further testified: "No, I don't know that there was anything to keep the driver of the automobile from seeing the street car. There was nothing between the street car and the automobile."

Mr. Dixon, a surveyor, testified that it is 12.4 feet from the west rail of the switch on the street car track to the curb on the west side of Hemphill Street; that he supposed an automobile was about 6 feet wide, leaving about 6 feet between the parked automobiles and the west rail of the switch; that, if the 12-inch projection of the street car be taken from that, there would hardly be room for an automobile to pass.

Mrs. Thetford, the mother of the boy, testified that he was nine years old at the time of the injury; that it was necessary to run the wheel of the automobile over the west rail of the switch to get clear of the parked automobiles; that she thought the street car was going to stop, and that she could get around the automobiles before the street car reached her; that the street car was about the middle of the switch when she saw that the motorman was not going to stop; that he had slowed up slightly when he came on to the switch at the south end, and she thought he was going to stop for another car; that "that is what switches are for."

Several passengers on the street car also testified. Some of them thought the automobile struck the street car about its center; one of the passengers testified that at one time she noticed the motorman stooped over, but the evidence fails to disclose just at what point on the switch this occurred, or how long he remained in a stooped position. And yet several others testified to the effect that the motorman was standing up, and that nothing appeared between the street car and the automobile; that all was open.

In the case of G., H. & S. A. Ry. Co. v. Wagner, 298 S. W. 552, 553, by the Commission of Appeals, facts were to the effect that the deceased, a postmistress, in the town of Kingsbury, was struck and killed by a passenger train which was scheduled to stop at that town for the purpose of picking up passengers and mail; that the deceased started from her post office about 150 feet northwest of the station and ran in a straight line, without changing her pace or course, until she was hit by the defendant's train as she crossed the track near the depot. At the time she was killed, she was carrying a sack of mail to the train, as was her daily duty and custom. The evidence showed that she was in plain view of the engineer from the time she started until the moment she was struck, and during that time the train covered about 140 feet. No attempt was made to stop the train until an instant before the deceased was struck, when the fireman told the engineer to stop. The evidence showed that the train was equipped with all modern appliances and brakes, and could have avoided striking the deceased by slacking its speed a single second, giving her time to cross the track. The engineer denied that he recognized her or saw the mail sack in her hands. The contention was made on appeal that the engineer was not bound to anticipate that the deceased would be so negligent as to run in front of the train. The Commission of Appeals, after assuming that she was guilty of negligence as a matter of law, laid down the following rule:

"In order for a person to be in peril, it is not necessary that bodily injury will certainly be suffered by him. He is in peril whenever he is pursuing a course which probably will terminate in serious bodily injury to him. Whenever it reasonably appears to a second person, from facts and circumstances within his knowledge, that a person is pursuing such a course and probably will pursue it to the end, then, in such event, the second person is held to have knowledge of the peril of the other. This doctrine, we think, is clearly deducible from the many decisions on the subject of discovered peril, among which are the following: (Citing numerous authorities.)

"It is believed that, under the facts and circumstances in evidence, it was the province of the jury to determine that the fireman, while he was looking at the deceased running at her utmost speed towards the depot, saw the mail bag in her hands; and knew that it was her duty to deliver the mail bag to the mail clerk on the train, on the south side of the track; and knew that, in an effort to perform that duty, she probably would go upon the track, as she did, and be struck by the train. The evidence, we think, is such as to justify the jury in finding that the fireman, notwithstanding his denial of such knowledge, knew all these things in time to avoid, by the exercise of ordinary care, injury to Miss Wagner. The issue of discovered peril is raised by the evidence."

The case of Lancaster v. Browder, 243 S. W. 625, by this court, was similar in its circumstances to the case of G., H. & S. A. Ry. Co. v. Wagner, from which we have just quoted. The Commission of Appeals, on writ of error, as appears from the report of the opinion in 256 S. W. 905, had this to say, quoting from the headnotes: "Evidence that decedent, when last seen alive, was crossing the track with the oncoming train 100 feet away, the headlight shining on her, and that she was walking fast, and had practically effected a safe crossing, when on account of the unusual speed of the train she was struck, precludes the court from saying as a matter of law that decedent was negligent in attempting to cross."

In the case of M.-K.-T. Ry. Co. v. Cunningham (Tex. Com. App.) 23 S.W.(2d) 343, 345, it appeared that the deceased, at a street crossing of the railway company's line in the city of Fort Worth, under circumstances constituting negligence, ran from a western direction across the railway line in front of an approaching engine and was struck and killed just as he was leaving the east line of the

car track. The engineer testified that he saw the deceased, and thought he was going to stop, and that, after seeing that the deceased was going to attempt to cross the tracks, he then applied all the instrumentalities at hand to stop the locomotive. There was other evidence related to the same effect, but what we have stated will perhaps indicate the trend of the testimony. The appellant railway company vigorously insisted that the evidence was insufficient to raise the issue of discovered peril. This court certified to the Supreme Court for determination the following questions:

"1. Is there any evidence raising the issue of discovered peril?

"2. Did the court err in refusing to submit the issue of whether the negligence of deceased was the sole cause of his death?"

In an opinion by Judge Short of the Commission of Appeals, approved by the Supreme Court, it was said, among other things, that: "In order that the issue of discovered peril may be raised, it is necessary to adduce evidence tending to show, first, that the deceased was in a position of peril, or would in reasonable probability enter a perilous situation; second, that he could not, or would not, in all probability, extricate himself from the dangerous situation; third, that after seeing the perilous situation of the deceased and realizing that he probably would not extricate himself therefrom, the operatives of the train fail to exercise ordinary care in the use of all the means at their command to avoid the collision; fourth, that, as a result of such failure, the deceased was injured. If the evidence embraced in the certificate, viewed in the most favorable light, substantially supports the material allegations on this subject, in the petition of the appellees then question No. 1 must be answered in the affirmative. We are of the opinion that the testimony quoted in the certificate on this subject * * * according to the rule above announced, is sufficient to raise the issue of discovered peril."

It was pointed out that, when the engineer discovered the deceased running towards the railway track with apparent intention of crossing, a sufficient time elapsed for the engineer to put on the brakes or to have whistled, either or both of which might have been sufficient to have enabled the deceased to have crossed the track in safety, especially in view of the evidence that Cunningham was struck as he was leaving the railway track on the east, and that he only needed a moment or two to have enabled him to have cleared the track and avoided injury.

A case from this court may also be cited, to wit, Northern Texas Traction Co. v. Mullins, 44 Tex. Civ. App. 566, 99 S. W. 433, 435, writ of error refused. In that case Mrs. Mullins was approaching the city of Fort Worth, and walking across a trestle or bridge over a ravine as an interurban car from Dallas was speeding westward towards the city of Fort Worth. The intervening space between the street car and Mrs. Mullins was several hundred feet, and nothing appeared to obstruct the view of the motorman of the car, thus presenting the inference that he saw deceased in front of him in time, with the instrumentalities at hand, to have either stopped or so slowed the speed of the car as to enable Mrs. Mullins to get off the track, it appearing that she was struck and knocked off the track just as she had succeeded in crossing the bridge. There was evidence tending to show that the motorman had made no effort to check the speed of his car, and we held that:

"It is to be scarcely doubted that appellee's testimony supports the inference that the motorman discovered Mrs. Mullins' dangerous position upon the trestle, and that she might not be able to escape therefrom in time to avoid injury while the motorman was not less than 300 or 400 feet east of her, and that, had he then used all the means at his command, the speed of the car would at least have been so retarded and decreased as to have enabled Mrs. Mullins to have escaped. She testified that a single additional step would have taken her beyond the reach of the car. A single instant of time was, therefore, all important to her, and we think that the testimony as a whole supports the conclusion that must be imputed to the verdict that the motorman failed to use the means at his command, which, if applied in the exercise of the greatest caution, would have given the necessary moment for escape. We conclude that the evidence warrants the judgment, and all assignments dependent upon such conclusion are overruled."

In the light of the cases cited, we think we must sustain the verdict of the jury on the issue of discovered peril. As stated, the evidence and its legal inferences warrants the conclusion that the motorman was standing up looking forward; that Mrs. Thetford and the approaching automobile was in plain view; that the motorman in the exercise of ordinary care must have seen the approaching automobile; and that Mrs. Thetford was probably making an effort to cross the narrow space between the street car tracks and the parked automobiles, yet the testimony of one or more witnesses was explicit that the motorman not only failed to apply his brakes or cut off his power, but increased his speed, if anything.

We fail to find any prejudicial error in any specific assignment relating to the issue of discovered peril, and, accordingly, overrule all assignments and propositions relating thereto.

It follows, we think, as stated in the beginning of this opinion, that assignments and propositions of error embodying objections to the court's charge and the charges refused relating to the alleged contributory negligence of the minor's parents and other subjects become immaterial, and as such are overruled, and to this we will add that we find no material error relating to the evidence, charge of the court, the remarks of the trial judge, and other proceedings which relate to the character and extent of the minor's injuries. We think the evidence fully sustains the verdict of the jury as to the amount of damages awarded and affirm the judgment.

### On Motion For Rehearing.

In the motion for rehearing special emphasis is directed to the contention that issues 5, 6, and 7, relating to the issue of discovered peril, are too broad and general, and are framed so as to leave the jury to speculate and surmise as to the particular time the motorman saw plaintiff's automobile, the contention being that these issues wholly ignore the vital "time element," as discussed in the opinion of Judge Critz, of Section A of the Commission of Appeals in the case of Northern Texas Traction Co. v. Weed, 300 S. W. 41.

This objection is one of numerous others to be found in paragraph 9 of appellant's exceptions to the court's charge, which constitutes the basis of appellant's twenty-second assignment of error and its twenty-fifth proposition based thereon. The assignment and proposition read as follows:

Twenty-second assignment: "Because the court erred in submitting to the jury special issues Nos. 5, 6 and 7, of the main charge, wherein the court undertook to submit to the jury the issue of discovered peril, for the reasons and in the manner shown in section 9 of defendant's objections and exceptions to the court's main charge."

Twenty-fifth proposition: "The trial court erred in submitting special issue No. 5 to the jury, in that the same is too broad and general and is so framed and worded as to leave the jury to speculation and surmise as to the particular time inquired about as to when the motorman saw the plaintiffs' automobile and by reason thereof places too onerous a duty and burden upon the defendant."

No special charge was requested looking to the correction of the alleged defect in special issues 5, 6, and 7, as submitted by the court, and it may be thus seen that the objections to issues 5 and 6 as presented to the trial court are materially narrowed, and that the "time element," as now pressed upon us, was not made prominent. A case quite similar to this is that of Gulf Refining Co. v. Youngblood (Tex. Civ. App.) 23 S.W.(2d) 522, 527. We quote the following from the opinion in

that case as written by Associate Justice Buck:

"The court submitted the issue to the jury as to whether Miss Youngblood, immediately prior to being struck by the truck, was in a perilous condition, and did the driver of the truck discover such perilous condition of Miss Youngblood immediately prior to striking her with his truck, and did said driver, after discovering such perilous condition * * * exercise ordinary care to use all the means at his hands (at his command) consistent with his own safety and the safety of his truck to avoid striking plaintiff. The court also inquired of the jury: Was the failure on the part of the driver of the truck to use all the means at his hands (command), consistent with his own safety and that of his truck, to avoid striking plaintiff, negligence, and was such negligence, if any, the proximate cause of the injuries, if any, sustained by Miss Youngblood? The complaint is that each and all of said special issues are too vague, general, and indefinite, and do not inquire of the jury when, where, at what time, and at what place the plaintiff was in a position of peril, and are merely of an evidentiary nature and suggestive and upon the weight of the evidence in assuming that plaintiff was in a position of peril which defendant's driver could have discovered in time to have stopped his truck. Appellant cites Northern Texas Traction Co. v. Weed, 300 S. W. 41, by the Commission of Appeals, and approved by the Supreme Court, as authority for its contention of error in this case. We have read the cited case and do not find any authority in it which would justify our sustaining this assignment. Therefore we overrule the tenth assignment as well as the ninth."

In the Weed Case, supra, Judge Critz observed that: "We should not look at the court's charge from the standpoint or experience of trained lawyers, but 'we must look at the court's charge as practical experience teaches that a jury, untrained in the law, would view it.'"

In the light of this rule, we think it quite improbable that the jury was misled to the prejudice of appellant. The jury found that the motorman saw the approaching automobile, and this is not questioned. The evidence also authorizes the conclusion that he was standing facing the rapidly approaching automobile but a few yards distant, with no obstruction between them; that he cut off his power, but did not apply his brakes. If he was performing his regular duties in running his car, as the evidence indicates, and as we have the right to assume, it is difficult to see how the motorman could keep from seeing the approaching automobile under circumstances indicating that it was not going to stop. If there could have been any doubt on the part of the jury about whether the motorman saw the perilous position of the minor in time to

have retarded the street car by applying his brakes sufficiently to have permitted the automobile to pass without a collision, there was and is no such doubt in our minds, for it appears in the statement of facts that the motorman who was operating the street car at the time was in attendance on the court at the time of the trial below, and that he was interviewed by appellant's claim agent, and not called upon to testify. He, of all persons, knew best when he saw the perilous position of the parties, and it is not unreasonable to infer that, if by him appellant could have shown that he did not see the peril of the minor in time to apply his brakes, it would have called upon him to testify.

However, the foregoing discussion is in reality superfluous, for there is yet another answer to the contention under consideration which we think decisive. In answer to special issues 1, 2, 3, and 4, the jury found that the motorman was guilty of negligence in a failure to keep a proper lookout and in operating his car at too great a rate of speed as it went out of the north end of the switch, and that the negligence in each case was the proximate cause of the minor's injury. The jury found that the minor was not guilty of negligence, and, if the negligence of his mother is not imputable to him, as we held, and as we yet think, these findings support the judgment in the minor's favor, regardless of the finding on the issue of discovered peril.

In Texas Jurisprudence, vol. 3, § 720, p. 1015, it is said: "Where a decision is based on two or more findings, and it is determined that one finding supports the judgment, there is no necessity to consider other findings or matters as to the evidence which have no relation to and cannot affect this particular finding. Similarly, if the theory on which the trial court could have rendered the judgment is supported by the pleadings and the evidence, the issues involved upon another theory become immaterial."

In Templeton v. Northern Texas Traction Co., 217 S. W. 440, 442, writ refused, this court said: "It is well settled that, in cases where special issues are submitted to the jury, it is enough if they find upon those on which, regardless of what the finding may be on the others, the judgment must stand." Citing cases.

See, also, Furst-Edwards & Co. v. St. Louis S. W. Ry. Co. (Tex. Civ. App.) 146 S. W. 1024; St. Louis S. W. Ry. Co. v. Inman (Tex. Civ. App.) 293 S. W. 650; Sears v. Sears, 45 Tex. 557.

We conclude that the objections to special issues 5, 6, and 7 should be overruled, and, other questions presented in the motion having been sufficiently disposed of, as we think, in our original opinion, the motion for rehearing will be overruled.