KUEMMEL v. VRADENBURG.

No. 12215.

Court of Civil Appeals of Texas.

San Antonio.

April 18, 1951.

Concurring Opinion May 23, 1951.

Rehearing Denied May 23, 1951.

W. Pat Camp, Morriss, Morriss, Boatwright & Lewis, San Antonio, for appellant.

Dibrell, Gardner & Dotson, Jas. F. Gardner, Clinton G. Brown, Jr., Brewer, Matthews, Nowlin & MacFarlane, San Antonio, for appellee.

POPE, Justice.

. This is an appeal from a judgment on a jury verdict convicting defendant of negligence arising out of a head injury proximately cause by a "hot-rod" racing car which ran into the minor plaintiff, who was a spectator at a car race.

The appeal concerns the following points:

(1) Was there any evidence and sufficient evidence to support the jury finding that the defendant was negligent in failing to maintain a barrier of reasonably sufficient strength to protect the spectators?

(2) Did the trial court err in sustaining an exception to defendant's answer and in refusing to submit an issue presenting the parents' negligence as the sole proximate cause? The answer alleged the parents' negligence in failing to supervise the child and in permitting him to go to a place of danger.

(3) Did the evidence support a damage issue which permitted recovery for future physical pain and mental anguish?

(4) Was the sum of $12,000 excessive?

We have examined the other points urged by appellant but find they are without merit.

On Easter Sunday, 1949, Mr. and Mrs. Vradenburg took their three-year-old son, Gregory, to Shadowland Race Track in Bexar County, where both an Easter Egg Hunt and "hot-rod" races occurred. A "hot-rod" was described as an automobile which had been assembled from a wide assortment of parts from different automobiles. The Vradenburgs paid their admission charge and entered the grandstand to watch the races. By stipulation and the evidence the defendant had control over and was proprietor of Shadowland under a rental agreement. At the intermission the child engaged in the Easter Egg Hunt, and afterwards, while the races were again in progress, the parents and the child left the grandstand and stood among other spectators alongside the track. One of the racing cars then left the track and struck the minor plaintiff who was on the spectator side of a protecting barrier made of two cables and cedar posts. This suit was brought by the minor only, and he recovered $12,000 on a jury verdict.

Appellant has briefed the case on the theory that the trial court has held the defendant negligent per se. On the contrary, supported by the evidence, there was a jury finding that the defendant was negligent in failing to maintain a barrier of reasonably sufficient strength. Defendant undertook to show that by maintaining the class of fence customarily used he had discharged his duty. Much of the evidence centered upon the inquiry whether the customary fence had been maintained, which the jury decided against the defendant. Defendant lost the case on the proof, facts and finding of negligence, rather than by reason of negligence per se.

■ The duty toward invited spectators of amusements may vary with the particular sport, but in the instance of an automobile race, the rule is summarized in 1 Blashfield, Cyclopedia of Automobile and Practice, § 763, as follows:

"The proprietor or promoter of an automobile race held as an amusement enterprise owes the duty of ordinary care to protect spectators lawfully present from injury.

"What shall constitute the proper degree of care depends upon the circumstances surrounding the particular race.

"For example, at a race held upon a state fair race track, which was circular in form, where spectators on the sides of the track were protected only by a flimsy wooden fence, and the speed of the machines tended to make them leave the track, it has been held to be negligence to permit the cars to be driven in excess of a mile a minute.

"However, a person or association maintaining premises on which automobile races are conducted as an amusement enterprise, or as an attraction at a state fair or the like, owes to invitees the duty to exercise ordinary care to see that the premises are reasonably safe. This obligation continues despite the fact that an independent contractor is employed to produce the races.

"A fair association or the like may therefore be found to be negligent in failing to provide suitable barriers or safety zones to prevent spectators from coming in dangerous proximity to the race track, especially where there are spectators who cannot be accommodated in the grandstand."

Arnold v. State, 163 App.Div. 253, 148 N. Y.S. 479, 483, states the rule to be that:

"Reasonable care required special construction to provide for the safety of those invited by the state to a place of public entertainment provided by itself. * * *

"If a race cannot be held without inherent and extreme risk to life and limb, the command of the law is that it must not be held at all.

"The greatest and most obvious source of danger from a nonprotected track was not guarded against except by a flimsy fence, which could not resist a powerful car, with tremendous momentum, in case it left the track, which the commissioners knew, or should have known was liable and even likely to happen. * * *

"I hold the state liable for holding or permitting to be held on its own ground, under the circumstances disclosed by the evidence, such a fast race, with powerful cars, on an unprotected track, without the exercise of reasonable care to provide against accidents well known to be likely to happen."

Accord, Virginia State Fair Association v. Burton, 182 Va. 365, 28 S.E.2d 716, 61 C.J.S., Motor Vehicles, § 577.

■ The charge substantially applied the above standard of duty toward invitees and the finding that the barrier was not of reasonably sufficient strength to protect the spectators was supported by the evidence. The appellee child with his parents, upon arrival at Shadowland, at first went to the grandstand. While the last race was in progress they left the grandstand in order to avoid the crowd. The child walked a few feet ahead of his parents and they all stopped near the barrier to watch the races. They stood among other spectators and never got beyond the spectator side of the protecting barrier. The testimony varied, but one witness stated that the child's hands were touching the barrier. The other testimony placed the child away from the barrier. During the races, warnings were given the spectators to stay away from the

barrier, but spectators did not move from the barrier as the races proceeded. The child never ceased to be an invitee to whom the duty was owed. Automobiles belonging to spectators were parked alongside the barrier. One of the speeding "hot-rods" left the oval shaped racing track and proceeded approximately twenty or twenty-five feet across the space between the track and the barrier, struck the barrier, collided with the automobiles parked on the spectator side of the fence, and hit the appellee causing severe head injuries.

The proof in this case shows that of the three classes of protective barriers customarily used at such racing tracks, the post and cable fence is considered the best and that such a fence was in use at Shadowland when the accident occurred.

Whether we agree with the jury is not the issue before us. Whether there was evidence to support the jury's finding of negligence in failing to provide a barrier of reasonably sufficient strength to protect the spectators is the issue. Appellant, Kuemmel, testified that the purpose of the barrier was to protect both the spectators and also the "hot-rod" drivers by pushing a vehicle back on the track. Four other qualified witnesses testified that the purpose of the barrier was to deflect the car so it would not come through the fence into the spectators. An expert who had been on 150 different "hot-rod" tracks the year prior to the accident stated that the customary size cable used in the construction of the barrier was "three-quarter inch up to one and a quarter inch" cable. He also stated that a five-eighths inch cable was one-eighth inch smaller than usual. These facts tend to show the size of cable customarily required by the "hot-rod" racing fraternity to protect spectators. The car instead of being stopped or deflected on contact with the barrier, according to some of the witnesses, sheared the posts, broke a cable, and came on through the cables and beyond the fence into the crowd. Appellant himself said the cable was only five-eighths inch cable, which was below that customary standard set by the expert called as his witness. Another witness said that it was less than half-inch cable, and the child's father said it was "about the size of my little finger." Another witness estimated the cable to be three-eighths inch cable. Ample evidence existed to show that the barrier fell below the customary standards.

Moreover, all the evidence shows that the barrier had two strands of cable anchored to posts set in concrete. One witness stated the top strand was chest high and the bottom strand was ankle high and sagging. Another witness said the top strand was shoulder high and the other was six inches from the ground. Still another witness said the top strand was chest high and the bottom strand was three feet off the ground. Another witness said the top cable was four feet from the ground and the bottom cable was sixteen or eighteen inches from the ground. Another witness said the top cable was thirty-six inches high and the bottom one was twenty-four inches. Still another said the top cable was fifty inches and the other was eighteen inches from the ground. Other witnesses expressed different views. Photographs of the fence at the place of the accident showed that the arrangement of the cables was visible and apparent.

The arrangement and condition of this fence was a matter for the jury to pass upon in answering the question as to its strength viewed in connection with the expert testimony of how strong it was purposed to be. Custom was used to prove both the class of fence and the quality of that class of fence used for these races. Shadowland had the customary class of fence, but its quality fell below the customary standard of the class, according to the jury finding.

Conformity with the uniform custom of persons engaged in a like business may be considered as evidence of proper care, but this does not preclude a showing that the custom itself is a negligent custom. Taylor v. White, Tex.Com.App., 212 S.W. 656; Trinity & Brazos Valley R. Co. v. McDonald, Tex.Com.App., 208 S.W. 912. That is not the case before us. The jury has here found, supported by evidence, that there was nonconformity with the customary precaution used at "hot-rod" races. Just as conformity with custom may

evidence freedom from negligence, nonconformity may evidence the presence of negligence. Hubb Diggs Co. v. Bell, Tex.Com. App., 1 S.W.2d 575; 30 Am.Jur., Negligence, § 34; 65 C.J.S., Negligence, § 16; 30 Tex.Jur., Negligence, § 74.

■ We also believe the court properly sustained the exception to the answer urging the parents' negligence as the sole proximate cause of the injury. It is not urged that the ruling on the exception forbade the introduction of any evidence as to the child's position near the barrier nor the circumstances leading up to his approach to the barrier... It is conceded that the parents' negligence is not imputable to the child. The defense of sole proximate cause is a rebuttal issue, since it rebuts the contention that defendant's act was the proximate cause of the injuries sustained. Sole proximate cause was submitted in connection with another matter not here in dispute. The definition for that term and the other terms were those usually employed in a charge and no objections were made to the definitions.

Negligence was defined as the failure to use that degree of care that a *person* of *ordinary prudence* would use under the same or similar circumstances.

Proximate cause was defined as an "act or omission which, in a natural and continuous sequence of events unbroken by any new and intervening cause, produces an event, and without which the event would not have occurred; and in order to constitute proximate cause of an event, as that term is used herein, the act or omission complained of must be such that the particular injury complained of, or some similar injury, *which might probably result therefrom, would, in the exercise of ordinary care, have been reasonably foreseen by a person of ordinary care and prudence* in the light of the attending circumstances." We omit the portion relating to new and intervening cause.

Sole proximate cause was defined as the *only* proximate cause. By definition, "sole proximate cause" contains the element of foreseeability. A finding of "sole proximate cause" compels a finding that the injury was such that it would "in the exercise of ordinary care have been reasonably foreseen by a person of ordinary care and prudence in the light of the attending circumstances."

■ This element of foreseeability also necessarily is included within the definition of negligence. How can a person fail to do an act which produced an injury which would "in the exercise of *ordinary* care have been reasonably foreseen by a person of *ordinary* care and *prudence* in the light of attending circumstances," without at the same time failing "to use that degree of care that a person of *ordinary prudence* would use under the same or similar circumstances?" If a person of ordinary care and prudence could reasonably have foreseen the injury in the exercise of ordinary care, that person cannot do or fail to do something which will so result and still be ordinary and prudent. To say that the ordinary prudent man may do a thing which resulted in the injury he should have foreseen as an ordinary prudent man is a paradox. This is a serious indictment of the ordinary prudent man. We think he would refuse to do that which he foresees probably will result in tragedy. A person of ordinary prudence cannot be a careful person, free from negligence, and yet fail to exercise ordinary care which results in an injury such as could be *foreseen by a person of ordinary care and prudence*. It becomes apparent that the element of foreseeability in the definition of sole proximate cause is negligence in fact. The parents' failure to supervise the child could not have been the sole proximate cause of the child's injury unless the parents could have foreseen that injury would result to the child. If they could have foreseen injury, then they were negligent, and the effect of invoking the doctrine of sole proximate cause is to impute this negligence to the child contrary to the rule of substantive law.

The use of "foreseeability" as a working formula for causation is settled law, although it is an admitted illogical concept. It was adopted and we are committed to that settled law in order to "avoid as far as possible the metaphysical and philosophical niceties in the age-old discussion

of causation." City of Dallas v. Maxwell, Tex.Com.App., 248 S.W. 667, 670, 27 A.L. R. 927. Confessedly, logic is abandoned in favor of a more practical rule which generally serves very well.

But this is a case where a parent's negligence may not be imputed. The parent's failure to behave as an ordinary prudent person, including his foresight, is not a matter of inquiry because the substantive law prohibits imputation of negligence to an unreliant child.

If pure logic is to control, then foreseeability has no place in causation at all. If logic is not to control we should get in exchange for logic a simple workable rule. But when we inquire, in a case where the parent's negligence is not imputable, whether that same parent could have foreseen the result as an ordinary prudent person, we impose the element of negligence while vowing it is excused. The foreseeability rule was a device to simplify. When used in this case it complicates and confuses. Negligence is not a defense, and yet by definition it would be submitted to the jury by indirection under a pseudonym. Such a submission is an invitation to a jury to impute to the child the sub-standard act or omission of the parent—the very thing the law prohibits. That a parent's negligence may not be imputed to the child would thus be reduced to a hollow and ineffective rule.

Having avoided the philosophical niceties relating to pure causation, we are now faced with the metaphysical niceties relating to the foreseeability which is defined into sole causation. In a case of this kind, the submission of sole causation, defined to include foreseeability on the part of the ordinary prudent person, is a confusion. To require foreseeableness in the case where imputed negligence is prohibited means that confusion again overtakes the practicable rule. When this occurs, the rule ceases to be practicable and simple, and no reason exists to disregard logic any further.

We have been cited to some cases in which the parents' failures were submitted as sole proximate cause. An examination of those cases fails to reveal that such issue was objected to or that the correctness of the submission was urged on appeal. Northern Texas Traction Co. v. Thetford, Tex.Civ.App., 28 S.W.2d 906, reversed Tex. Com.App., 44 S.W.2d 902; Southwestern Bell Telephone Co. v. Doell, Tex.Civ.App., 1 S.W.2d 501; Ross v. Haner, Tex.Civ. App., 244 S.W. 231; Id., Tex.Com.App., 258 S.W. 1036.

This matter was directly passed upon in the case of Terrell Wells Health Resort v. Severeid, Tex.Civ.App., 95 S.W.2d 526, and the issue of sole proximate cause in a case such as this was rejected and held improper. The court there held that the issue amounted to the imputation of negligence. We see no reason to depart from the rule as there announced. Accord, Kelley v. Texas & P. Ry. Co., Tex.Civ.App., 149 S.W. 349; Galveston, H. & H. Ry. Co. v. Moore, 59 Tex. 64; Restatement 11, Torts, §§ 449, 452.

Nor do we think the damage issue which permitted recovery for future pain and mental anguish was improperly submitted by reason of any uncertainty of the medical testimony. A medical witness, completely qualified, described a fracture to plaintiff's head as a depressed fracture of the skull which necessitated surgery for the removal of bone and dirt from the brain. On the second and third days after the operation, the child became rigid and spastic, making his movements and breathing difficult. At one point breathing entirely stopped. As late as the time of the trial, the plaintiff still hemorrhaged at the nose. His coordination was bad and his memory poor. The injury resulted in permanent scar tissue on the brain, which, according to the expert, "is *likely* to cause people to have convulsions or epileptic fits." The word *likely* has been held to be sufficient to give that measure of certainty required for future damage. Fordyce v. Moore, Tex. Civ.App., 22 S.W. 235. We hold that convulsions and epileptic seizures are not dissociated with pain and mental anguish and are conditions which, under the evidence, will probably result from the brain injury. Dallas Railway & Terminal Co. v. Enloe, Tex.Civ.App., 225 S.W.2d 431; Mercer v.

Evans, Tex.Civ.App., 173 S.W.2d 206; Harris v. Sadler, Tex.Civ.App., 55 S.W. 2d 173. The doctor also testified: "The *most likely* result he would end up with would be a condition of spasticity. A recurrence of the same thing he had soon after the injury." That testimony means that a condition of spasticity similar to that occurring soon after the injury is likely, in the superlative degree, to reoccur. It does not mean that it necessarily will occur, but the rule of reasonable probability and medical certainty does not require exact prophecy. For these reasons and the facts stated in connection with this point, we shall overrule the point as well as the point that the damages are excessive.

The judgment is affirmed.

W. O. MURRAY, Chief Justice (dissenting).

I am unable to concur in the opinion of the majority. Appellant, by the third and fourth paragraphs of his answer, plead the negligence of the parents in permitting their three-year-old son, Gregory Vradenburg, to run ahead of them and to go into a place of danger as the sole proximate cause of his injuries. The trial judge sustained special exceptions to these two paragraphs. By trial amendment, appellant plead the act of the parents in permitting their three-year-old child to go into a place of danger as the sole proximate cause of his injuries, whether the act was one of negligence on the part of the parents or not. The trial amendment was also stricken out by the sustaining of the special exception to it.

Thus we have presented in this case the clear cut question of whether or not the act of a parent or other custodian of a child in permitting it to go into a place of danger may ever be plead as a sole proximate cause of the injury to such child. The act alleged to be the sole proximate cause need not be a negligent act. Dallas Railway & Terminal Co. v. Guthrie, Tex.Civ. App., 206 S.W.2d 638, reversed on other grounds, 146 Tex. 585, 210 S.W.2d 550; Hicks v. Brown, 136 Tex. 399, 151 S.W. 2d 790.

The rule with reference to the defense of sole proximate cause is well stated by Mr. Associate Justice Norvell in Heard & Heard, Inc. v. Kuhnert, Tex.Civ.App., 155 S.W.2d 817, 820, as follows:

"It is well settled that upon a trial of the merits of a negligence case, when the evidence is sufficient to sustain findings that the sole proximate cause of plaintiff's injuries was the action of a third party, the trial court upon proper request must submit said issue of sole proximate cause to the jury. Horton & Horton v. House, Tex. Com.App., 29 S.W.2d 984, holdings approved by the Supreme Court; Schumacher [Co.] v. Shooter, 132 Tex. 560, 124 S.W. 2d 857; Parker v. Jakovich, Tex.Civ.App., 115 S.W.2d 790; Collier v. Rives, Tex.Civ. App., 103 S.W.2d 830; 41 Tex.Jur. 1122, § 283.

"Prior to September 1, 1941, this issue was available to the defendant under a general denial. Schumacher [Co.] v. Shooter, supra. (See Rule 279, R.C.P.)

"A finding favorable to the defendant upon such an issue is a finding that the material allegations of plaintiff's petition are untrue, including the allegation that the proximate cause of plaintiff's injuries was an act of negligence attributable to the defendant. Horton & Horton v. House, supra.

"The issues of 'sole proximate cause' and the somewhat similar 'unavoidable accident' go to the rebuttal or destruction of the plaintiff's cause of action and not merely to the avoidance of liability. The plaintiff must negative their existence. Such issues are clearly distinguishable in nature from the affirmative defense of contributory negligence. This is apparent from the authorities above cited. As to contributory negligence, see Koons v. Rook, Tex.Com. App., 295 S.W. 592, 597; 30 Tex.Jur. 811, § 135; Martin v. Cable, Tex.Civ.App., 140 S.W.2d 894."

It is contended, however, that to permit the appellant in this case to raise the issue of sole proximate cause would be in effect to permit him to impute the negligence of the parents to their three-year-old child.

The rule in this State is that negligence of the parents is never to be imputed to their infant child who has not yet arrived at the age of discretion where he can be expected to look after his own safety. For this reason the negligence of the parents in permitting a child to go into a place of danger is never to be plead as contributory negligence to bar a recovery by the infant child in a suit instituted solely for his own benefit.

However, the rebutting issue of sole proximate cause does not impute the negligence of the parents to the infant child and hold him responsible therefor, thereby barring his recovery, but it rather has the effect of rebutting or destroying the cause of action asserted by the plaintiff. Here we do not come to the question of proof because the trial judge as a matter of law sustained exceptions to both the allegations of defendant's answer and to his trial amendment, and therefore he was never given an opportunity to offer proof upon the question of sole proximate cause.

However, there was evidence introduced during the trial which had the effect of raising the question of sole proximate cause. In determining whether or not the question was raised we must look at the evidence in a light most favorable to the appellant. The evidence shows that appellant maintained a grandstand at the Shadowland Race Track from which spectators could view the races in safety. In front of this grandstand was a cyclone fence supported by two steel cables, and there is no contention that there was any danger of one of these racing automobiles going through this cyclone fence. He maintained a playground in back of the grandstand where children could be kept in safety. There were continuous announcements over the loud speaker advising the spectators that it was dangerous to stand near the barrier fence and that they must keep back away from it. The barrier fence was composed of two steel cables strung upon cedar posts set in concrete and the expert testimony was to the effect that this was the best type of fence for the purpose of protecting the spectators and the drivers of the hot rods because it would have a tendency to give and spring the hot rods back onto the race course. The barrier fence was set thirty-five feet away from the race course, thus creating an area thirty-five feet wide between the spectators and the race course. The race course was a 5/8 of a mile oval shaped track, and the races were run at a maximum speed of from fifty-five miles on the turn to eighty-five miles per hour on the straightway. There was also evidence that the barrier fence did not break and that the lower cable caught the wheel of the hot rod and the hot rod came to rest with its front wheel against the lower steel cable. If this evidence had been believed by the jury they could easily have concluded that appellee received his injuries without any negligence on the part of appellant, and this would have brought them to the conclusion that the sole proximate cause of appellee's injuries was the failure of his parents to properly supervise him and their taking him from a zone of safety to a zone of danger.

It is true that the jury found that appellant was guilty of negligence, but in passing upon the question of whether or not the appellant had the right to plead the issue of sole proximate cause and have it submitted to the jury, we must view the situation as it existed before the charge was read to the jury and before the answers of the jury were returned. The conditions as they existed before, not after, the verdict must control. 41 Tex.Jur. 1117, § 280; Adams v. Corder, Tex.Civ.App., 205 S.W.2d 608; Montgomery v. Gay, Tex.Civ.App., 212 S.W.2d 941.

In denying to appellant the right to plead and offer evidence raising the issue of sole proximate cause he was denied a valuable right, and in doing so the court, in my opinion, committed reversible error. In Southwestern Bell Telephone Co. v. Doell, Tex.Civ.App., 1 S.W.2d 501, 506, a six-year-old boy was injured while riding in an automobile driven by his older brother alleged to have been contributorily negligent in driving at an excessive rate of speed when struck by a truck. It was held by the Fort Worth Court of Civil Appeals that the negligence of the driver, if any, was not imputable to the child. The Court said:

"We do not think that, under the facts, the negligence, if any, of the driver of the Ford sedan, should be imputed to the plaintiff, unless it was the 'sole proximate cause' of the injury; then, of course, it would not be imputable."

In 29 Tex.Jur. 103, paragraph 53, the following statement is found: "Where contributory negligence is out of the case by reason of the statutory provisions cited, pleading and proof that the servant's own act was the sole proximate cause of the injury constitutes a good defense, since the allegations that the injury was caused by the master's negligence is to be negatived."

In Fox v. Chicago, St. P., M. & O. R. Co., by the Supreme Court of Minnesota, 121 Minn. 511, 141 N.W. 845, 847, the Court said: "Of course, if the father was negligent, and his negligence was the sole cause of the injury, there would be no room for liability on the part of defendant. No such situation is presented here."

In Northern Texas Traction Co. v. Thetford, Tex.Civ.App., 28 S.W.2d 906, 910, the Court said: "In this connection we will note that, while the jury found Mrs. Thetford, the driver of the car, to have been negligent in attempting to drive past the point of collision at the time and in the manner in which she did, it was yet found by the jury that such negligence was not the sole proximate cause of the collision, it thus appearing that at most the negligence of the mother was but a concurring cause of negligence with that of the streetcar driver, both operating in injury to the minor child who was without negligence, a condition of the case which, if unaffected by erroneous charges, objectionable evidence, or other erroneous proceeding, supports the judgment below."

In Ross v. Haner, Tex.Civ.App., 244 S.W. 231, 235, the Court said: "The continuing negligence on the part of his parents to make the repair does not, as a matter of law, affect his right under said contract, unless such negligence constituted the sole proximate cause of his injuries. This was a question for the jury, and was decided by them against appellants' contention."

The above case strongly indicated that the negligence of a parent or other custodian of a child in permitting him to go into a place of danger, which cannot be plead as contributory negligence because the negligence of the parents can never be imputed to the child, may nevertheless be plead as sole proximate cause. I have found no authority holding to the contrary.

In the majority opinion the case of Terrell Wells Health Resort v. Severeid, Tex. Civ.App., 95 S.W.2d 526, is cited as authority for the proposition that the act or negligence of the parent or custodian of an infant child cannot be relied upon as sole proximate cause. It is true the case does so hold, but the only reason given for the holding is that the negligence of a parent or custodian cannot be imputed to the infant, which is indubitably the law. The court seemed to have entirely overlooked the fact that in pleading the negligence of the custodian as sole proximate cause you are not attempting to impute the negligence of the parent or custodian to the infant, but simply rebutting the cause of action alleged by the plaintiff. The Court in its opinion had previously reversed the cause on other grounds and what was said with reference to the issue of sole proximate cause may very properly be regarded as *obiter dictum*.

Also, in this connection, the majority opinion cites the cases of Kelley v. Texas & P. Ry. Co., Tex.Civ.App., 149 S.W. 349, and Galveston, H. & H. Ry. Co. v. Moore, 59 Tex. 64. The Moore case is based entirely upon the proposition that the negligence of the mother cannot be imputed to the infant and no question of sole proximate cause seems to have been raised in that case.

In the Kelley case complaint was made of a certain charge given by the court to the jury, the court in speaking of this charge said: "It is in effect imputing the negligence of the mother to the plaintiff. This cannot be done." I have no quarrel with this holding of the court. Such is conceded to be the law.

It is my opinion that the trial judge committed reversible error when he denied to

appellant the right to plead and offer proof to the effect that the negligence of the parents in permitting the minor appellee to leave a place of safety and go into a place of danger, was the sole proximate cause of appellee's injuries, and that such error calls for a reversal of the judgment herein.

I am also of the opinion that the evidence in this case does not show that appellant failed to keep the premises at the Shadowland Race Track in a reasonably safe condition for spectators. He furnished them a grandstand in which they could sit with absolute safety. He also maintained a playground in which children could be kept with safety. He maintained a barrier fence some thirty-five feet from the edge of the race track, which was described by expert witnesses as being the best type of barrier fence known to the automobile racing fraternity, which consisted of cedar posts, four inches in diameter at the top, set in concrete, twelve feet apart, upon which were strung two steel cables ⅝ of an inch in thickness. It is true that the experts stated that ordinarily this cable should be three quarters of an inch in thickness, but they further stated that the cable ⅝ of an inch in thickness was sufficient. There is no evidence that the fence at the spot where the accident occurred was in a bad state of repair, or that appellant had any knowledge of any weakness in the fence. There is absolutely no evidence that the fence was not of sufficient strength to turn the hot rod automobiles, other than the fact that there is testimony that the bottom cable broke at the time of this accident. The mere fact that the cable broke on the occasion in question is not sufficient evidence to establish the fact that appellant was guilty of negligence in not maintaining a fence of reasonably sufficient strength to protect the spectators. The evidence does show that this race track had been in existence for some ten years; that this fence had been there during that time, and that never before had an automobile gone through the fence and injured a spectator. As was said by the Supreme Court of Texas in Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374, 375: "After a careful examination of the evidence, viewed most favorably to the plaintiff, we conclude that the evidence is not sufficient to justify the submission of the case to the jury, and that the district court correctly instructed a verdict for the defendant. The mere fact that Mrs. Adair slipped and fell does not establish the bank's liability; there must be evidence showing that in some way the bank was at fault and that its fault was a cause of the injury."

See also Rogers v. Collier, Tex.Civ.App., 223 S.W.2d 560, and Wells v. Texas Pacific Coal & Oil Co., 140 Tex. 2, 164 S.W.2d 660.

The proprietor of an automobile race track is not the insurer of the safety of the spectators who pay admission and attend such races. He is only required to use reasonable care to have such premises reasonably safe for such spectators. Stein v. Buckingham Realty Co., Mo.App., 60 S.W. 2d 712; Blashfield's Automobile Law, Vol. 1, part 2, p. 708, § 763; Arnold v. State, 163 App.Div. 253, 148 N.Y.S. 479.

The evidence here is undisputed that the barrier fence maintained at the Shadowland track was one of the best type of fences usually maintained throughout the United States by others who are engaged in the business of managing "hot-rod" race tracks. It will be presumed that people engaged in such business are reasonable prudent persons and that the method used by them to make their premises reasonably safe for spectators is a proper method unless and until the contrary is shown by competent evidence.

In Houston & T. C. R. Co. v. Werline, Tex.Civ.App., 84 S.W.2d 288, 290, it was stated: "The case of Taylor v. White, 212 S.W. 656, 657, by the Commission of Appeals, was a suit to recover damages for injuries sustained by falling on a machine; the negligence alleged being the failure to place a guard rail around it. The court said: 'The custom of others engaged in like business is not the absolute test of negligence, but where the undisputed evidence shows affirmatively, as it does in this case, that the defendant was conducting his business in accordance with the uniform custom of persons engaged in like business, it

devolves upon the plaintiff, before he can recover, to produce evidence showing that such custom is negligent.' To the same effect see City of Teague v. Radford (Tex. Com.App.) 63 S.W.2d 376; El Paso [& S. W.] R. Co. v. Foth, 101 Tex. 133, 100 S.W. 171, 105 S.W. 322; Missouri, K. & T. R. Co. v. Carter, 95 Tex. 461, 484, 68 S.W. 159; Washington, [& G.] R. Co. v. Mc-Dade, 135 U.S. 554, 10 S.Ct. 1044, 34 L.Ed. 235; Grand Trunk R. Co. v. Ives, 144 U. S. 408, 12 S.Ct. 679, 36 L.Ed. 485; Union Pac. Ry. Co. v. Daniels, 152 U.S. 684, 14 S.Ct. 756, 38 L.Ed. 597; Canadian No. Ry. Co. v. Senske, 8 Cir., 201 F. 637; Merton v. Michigan Cent. R. Co., 150 Wis. 540, 137 N.W. 767, 768; 20 R.C.L. § 23, p. 30."

In Volume 38, American Jurisprudence, page 681, § 34, the rule is stated thus: "The conclusion to be reached upon undisputed evidence which shows that the defendant acted in accordance with the uniform custom of persons engaged in a like business, in the absence of any evidence showing that such custom is negligent, should be that the defendant did not act negligently."

In 65 C.J.S., Negligence, § 16, we find the following: "Such conformity may even afford a sufficient basis for an inference that proper care was exercised, in the absence of any evidence tending to show that the custom did not involve reasonable care, or unless the common experience of the ordinary juror would enable him to determine, without evidence on the subject whether conformity to the custom was sufficient care."

See also, Dunagan v. Appalachian Power Co., 4 Cir., 33 F.2d 876, 68 A.L.R. 1393; Stein v. Buckingham Realty Co., Mo.App., 60 S.W.2d 712.

Furthermore, the issue submitted to the jury as to appellant's negligence was not the proper issue. In view of the fact that appellant maintained a safety zone in which appellee and his parents were seated just prior to the accident, and the further fact that there was a fence which kept the spectators from going closer than thirty-five feet from the race course, and the further fact that some of the experts testified that at some tracks no barrier fences at all were maintained, the first question which should have been submitted to the jury was, whether or not, under all the circumstances, the appellant owed the duty of maintaining a barrier fence of reasonably sufficient strength to protect the spectators at the spot where the injury occurred. The issue submitted assumed that appellant owed this duty and simply asked the question if he discharged this duty.

For all of the reasons above stated, I respectfully enter my dissent from the opinion of the majority.

NORVELL, Justice.

I concur in the opinion of Mr. Justice POPE and agree with the reasons therein stated for affirming the judgment appealed from. To my mind, this is not a proper case for the submission of the rebuttal issue of "sole proximate cause." Concededly the submission of this issue under certain factual circumstances is sanctioned by precedent in this State, but the issue is something of an anomaly and the enlargement of its use is not favored.

We say that if there be one "sole proximate cause" there cannot be several "proximate causes" and, therefore, if some action other than that of the defendant be a "sole proximate cause," an act of the defendant cannot be a "proximate cause." However, when we consider the legal or technical definition of "proximate cause," it becomes apparent that the foreseeability of the wrong person is inquired into, i. e., some one other than the defendant or person sought to be charged. If it be a rule of substantive law that a person is charged only with consequences he could reasonably foresee, it seems incongruous to inquire into the foreseeability of a person other than the one sought to be held.

This is illustrated by the facts in the case of Lombardi v. Wallad, 98 Conn. 510, 120 A. 291, wherein a defendant was charged with negligently kindling a rubbish fire on a lot to the rear of two tenement houses without taking proper precautions to protect children therefrom,

with the result that a six-year-old girl was burned to death. One of the defenses urged was that an older child had ignited a stick from the burning embers of the fire and touched it to the dress of the little girl. It was asserted that this latter act brought about the fatal result and that the leaving of the fire unguarded was therefore not a proximate cause of the child's death.

In considering the problem thus presented, an inquiry into the "foreseeability" of the boy with the stick would seem wholly immaterial. The pertinent inquiry relates to whether or not the person who left the fire burning could have reasonably foreseen the act of the boy with the stick or some similar act thereto.

In the present case, if we assume that the child when injured was standing with his hands touching the barrier, it is this circumstance of the child's position which might be urged as breaking the causal connection between the act or omission of the defendant and the child's injuries. It is difficult to see how the "foreseeability" of the parent bears upon the matter, one way or another. Certainly, the causal connection between the defendant's act or omission and the child's injuries sustained while he is near the barrier, if broken at all, would be broken as effectively by the action of the child in suddenly and unexpectedly breaking from his parent's grasp and racing to the barrier as it would by his wandering unattended until he reached the protective fence.

The "sole proximate cause" issue is the one appellant contends should have been submitted, but it does not fit the pleaded circumstances of this case. A child is an animate thing, capable of movement. When a person drives an automobile on the wrong side of the road, such action under proper circumstances may be said to be the "sole proximate cause" of a passenger's injuries with some support in precedent and without too much violence to the rules of logic. But in this case, the neglect of the parent must have concurred with the action of the child in order to produce injury. Such neglect cannot be a "sole proximate cause," for the adjective "sole" is defined as, "be-

ing or acting without another; single; individual." It is synonymous with "only; alone; solitary." Webster's New International Dictionary, 2d Ed.

If an owner of an automobile negligently allows a known incompetent driver to use his automobile, such action may be a proximate cause of another's injury, Butler v. Spratling, Tex.Civ.App., 237 S.W.2d 793, but it cannot be the "sole proximate cause" of an injury, for it is necessary that it operate in connection with some act or omission of the driver to bring about injury. The action of the automobile owner is a concurring cause, and cannot be a sole cause. Similarly, in this case the inattention of the parent must concur with some action or movement on the part of the child to produce injury. The parent did not place or hold the child against the barrier, and unless the word "sole" be disregarded or redefined beyond recognition, the inattention of the parent could not be the *sole* proximate cause" of the child's injuries.